ANTRIM *v*. McKELROY.

5-1706                                    319 S. W. 2d 209

Opinion delivered December 22, 1958.

[Rehearing denied January 26, 1959]

*Q. Byrum Hurst, C. A. Stanfield,* for appellant.

*Richard W. Hobbs & B. W. Thomas,* for appellee.

PAUL WARD, Associate Justice. In this litigation appellee, J. A. McKelroy, sought to cancel a deed which he executed to his son (and also to cancel subsequent conveyances stemming therefrom including the one to appellant) on the ground of the lack of sufficient mental capacity at the time said deed was executed. From the decee of the Chancery Court cancelling the deeds and restoring the property to appellee, appellant prosecutes this appeal.

After a careful reading of all the testimony relating to appellant's mental capacity at the time he executed the deed in question we have concluded the trial court's finding that he did not have the necessary mental capacity is supported by the weight of the evidence.

We have, however, further concluded that the decree of the trial court cancelling the deeds and restoring the property to appellee must be set aside. Our reasons for this conclusion will be discussed hereafter, and in doing so all relevant testimony will be set out. This makes it unnecessary to re-examine separately all the evidence relative to appellant's mental status at the time he executed the deed to his son. Some of it will be noted as other points are discussed.

We find that, regardless of appellee's lack of mental capacity at the time he made the deed, he later ratified the transaction at a time when he was capable of doing so.

For a better understanding of the issues, a brief factual background will be helpful. On March 13, 1954 appellee executed a warranty deed to his son, T. F. McKelroy, conveying Lots 12, 14, and 15 of Block 1 of J. H. Smith Addition to Hot Springs; On May 2, 1955 T. F. McKelroy conveyed the same property to his brother, Scotty E. McKelroy, and his wife, and; on February 16, 1956 Scotty and his wife conveyed the same land to appellant, the consideration being $5,600. This sale

was negotiated by H. Ward Conde as appellant's agent who is a real estate broker and who apparently assisted appellant with her financial and business affairs generally.

Appellee's mental history and condition is adequately set forth in a letter, dated June 6, 1957 and admitted as evidence by agreement, written by Dr. Robert G. Carnahan, Assistant Superintendent of the State Hospital. In substance it shows: Appellee was admitted to hospital first time on March 17, 1954 on a Physician's Statement but was never admitted through a court; He stayed until May 21, 1954 and was released; He was returned to the hospital on June 7, 1954, and conditionally discharged on October 18, 1954; He was returned November 12, 1954 and conditionally discharged again October 18, 1955. He was completely discharged on October 18, 1956 after he had been out of the hospital a year, and; He has had no further trouble and he could be considered competent at the present time. Dr. Carnahan further stated that he considered it unlikely appellee had sufficient mental capacity to understand the nature and effect of business at the time he executed the deed on March 13, 1954. Other medical testimony regarding appellee's mental capacity is that contained in a letter by Dr. Charles D. Yohe dated June 18, 1957, admitted by agreement. Dr. Yohe's testimony, based on an examination of appellee three days previously and on reports by Dr. Carnahan, is, in substance: He agrees with Dr. Carnahan that appellee lacked mental capacity to execute the 1954 deed, but that he was now mentally competent. Among other things, his letter states:

"Relative to the situation that he (appellee) is in, he could now be considered sane and competent"; ". . . as one sees him now . . . he does think rationally, forms logical conclusions, and his memory is intact"; "He is not senile."

In view of the above medical testimony and in view of other lay testimony and certain facts to be later noted, we cannot escape the conclusion that appellee had regained

normalcy (to the extent of understanding ordinary business transactions) as early as October 18, 1955. Dr. Carnahan stated that, according to the hospital records, appellee was conditionally discharged on October 18, 1955, and that he was completely discharged one year later. It is not shown that he needed or received any treatment during the intervening one year period. Mrs. Johnson said she saw appellee nearly every day for several years, that she saw and talked to him in September of 1956, and that she saw no difference in his conduct and attitude from that of other neighbors. H. Ward Conde testified to many small business transactions with appellee beginning early in 1956, to which reference will be made later.

It is appellee's actions and conduct during the year 1956 that impel us to conclude he ratified the 1954 conveyance of his property. It is noted that there were three houses on the lots conveyed by appellee and that appellee's son and his wife lived in one of the houses. After appellee was discharged from the hospital on October 18, 1955, he went to live with this son. The uncontradicted testimony of Conde was that he told appellee that Scotty and his wife had given appellant a mortgage on the property for $1,800 and that appellee's only reply was "well, those kids shouldn't do that". After this, on February 16, 1956 appellant bought the property assuming the $1,800 mortgage and paying Scotty $3,600 in cash, and took a deed from Scotty and his wife. From that time on Scotty became a renter. Scotty's wife paid the rent of $30 per month to appellant up to April, 1956. It seems that shortly after this time Scotty and his wife moved to Texas, leaving appellee in the house. Following this appellee paid the rent for May, 1956; In June (same year) he paid $23 and $7 on separate occasions; then appellee asked to have the rent reduced, and appellant made a reduction of $5 per month; and after that appellee made rent payments on June 12, August 20, September 26, September 28, October 2, October 18, and October 30, all in 1956. Appellee admits paying rent. Conde testified that ap-

pellee never said anything about being the owner or about not having to pay rent. It was not until appellee got behind with his rent in a sizeable amount and was threatened with eviction that he employed attorneys and filed this suit on January 11, 1957 to cancel the deeds. We feel that these acts on the part of appellee clearly amounted to a ratification of the deed to his son.

This court has many times held that a person who has regained sanity can ratify his act or deed performed while *non compos*. See: *George* v. *St. L., I. M. & S. Ry. Co.,* 34 Ark. 613 at page 626; *Eagle* v. *Peterson,* 136 Ark. 72, 206 S. W. 55, and; *Brandon* v. *Bryeans,* 203 Ark. 1117, 160 S. W. 2d 205. In this connection we have uniformly held that a deed executed by an insane person is voidable only and not void. See: *George* v. *St. L., I. M. & S. Ry. Co.,* supra; *Langley* v. *Langley,* 45 Ark. 392; *Eagle* v. *Peterson, supra,* and *Brandon* v. *Bryeans, supra.*

The defense of Ratification should ordinarily be pleaded but it was not done in this case, and that gives us some concern. It seems, however, that this is not a fatal defect under certain circumstances and especially where equities are involved.

In the case of *Fairbanks-Morse & Company* v. *Hogan,* 201 Ark. 1114, 148 S. W. 2d 162, where a similar question was presented, the court said: "When appellee introduced evidence which tended to create an estoppel there was no objection, and it cannot be complained of now." While the above case dealt with estoppel, it must also be pleaded as a defense ordinarily. In *Parker* v. *Jones,* 221 Ark. 378, 253 S. W. 2d 342, we said: "Where a case is tried upon an issue not tendered by an answer and evidence is introduced concerning it without objection, the answer will be treated as having been amended to conform to the proof and the sufficiency of the answer may not be challenged on appeal." Where a waiver was not pleaded in *Athletic Tea Company* v. *McCormack,* 159 Ark. 405, 252 S. W. 7, it was stated: "It is true appellee did not interpose the waiver as a defense, in

his written answer, but, without objection on the part of appellant, evidence was introduced, and the case tried, upon the theory that appellee had been released as surety because appellant waived the weekly reports required by the contract.'' For holdings to the same effect see: *Nance* v. *Eiland*, 213 Ark. 1019, 214 S. W. 2d 217, and *Bridgman* v. *Drilling*, 218 Ark. 772, 238 S. W. 2d 645. The reason for the rule seems to be based partly at least on the equitable policy of deciding litigation on its merits, and applies only where there is no objection to the introduction of the questioned testimony. There was no objection made in this case.

We cannot help being impressed by the fact that appellant paid $5,600 for the property to one of appellee's sons without (as she stated in her deposition) knowing about appellee's mental condition in 1954. In addition, she has made valuable improvements on the property. It would manifestly be unfair for her to suffer the entire loss if, in fact, appellee ratified the transaction at a time when he was sane and in possession of the pertinent facts.

Since, however, there was no plea of ratification, and since it is possible that appellee would have introduced proof in rebuttal had such a plea been made and will do so if given a chance, we have decided the cause should be reversed and remanded for further development, consistent with this opinion, along the lines indicated. It is so ordered.

Reversed and remanded.

McFADDIN and GEORGE ROSE SMITH, JJ., dissent; HARRIS, C. J., and ROBINSON, J., concur.

SAM ROBINSON, Associate Justice, (concurring). I concur for the reason that I believe the pleadings and the evidence justify a conclusion that appellant should prevail on the theory of being a *bona fide* purchaser without notice of any equities in appellee's favor.

I am authorized to say that the Chief Justice also has this view.

876

GEORGE ROSE SMITH, Associate Justice, (dissenting). The majority rest their decision on the doctrine of ratification. Not only was this defense not pleaded, it was not even mentioned in the briefs filed in this court. We have repeatedly held that an appellant abandons any error not argued in his brief. *Harris* v. *Edwards,* 129 Ark. 253, 195 S. W. 1064; *Mo. Pac. R. Co.* v. *Harding,* 188 Ark. 221, 65 S. W. 2d 20; *Connell* v. *Robinson,* 217 Ark. 1, 228 S. W. 2d 475. Those precedents are binding on us in the sense that they should be followed or overruled; we are not at liberty simply to ignore them. The rule protects the trial court by not requiring him to pass upon issues not presented to him and protects the appellee by not requiring him to argue points not mentioned in the appellant's brief. I am unable to join in the majority's action in ignoring this settled rule of practice.

McFADDIN, J., joins in this dissent.