### McKELROY v. ANTRIM.

5-1985                                                    330 S. W. 2d 99

Opinion delivered December 7, 1959.

[Rehearing denied January 11, 1960]

*B. W. Thomas* and *Richard W. Hobbs,* for **appellant.**

*Q. Byrum Hurst* and *C. A. Stanfield,* for appellee.

Jim Johnson, Associate Justice. This case is before us for the second time on appeal. It was originally remanded in order that appellant, J. A. McKelroy, might offer proof to rebut evidence of facts which this Court held constituted a ratification of a sale to appellee, Min-

nie F. Antrim, at a time when appellant was capable of making such ratification. See: *Antrim* v. *McKelroy*, 229 Ark. 870, 319 S. W. 2d 209.

Upon further hearing consistent with the original opinion of this Court, the Chancellor properly treated all the evidence of the first hearing relative to ratification as if it were before him on the second hearing. That evidence, as determined by this Court, is as follows:

"It is J. A. McKelroy's actions and conduct during the year 1956 that impel us to conclude he ratified the 1954 conveyance of his property to his son. It is noted that there were three houses on the lots conveyed by J. A. McKelroy and that McKelroy's son and his wife lived in one of the houses. After J. A. McKelroy was discharged from the State Hospital on October 18, 1955, he went to live with his son. The uncontradicted testimony of Conde (Minnie F. Antrim's agent) was that he told J. A. McKelroy that McKelroy's son Scotty and his wife had given Minnie F. Antrim a mortgage on the property for $1,800 and that J. A. McKelroy's only reply was 'well, those kids shouldn't do that'. After this, on February 16, 1956, Minnie F. Antrim bought the property assuming the $1,800 mortgage and paying Scotty $3,600 in cash, and took a deed from Scotty and his wife. From that time on Scotty became a renter. Scotty's wife paid the rent of $30 per month to Minnie F. Antrim up to April 1956. It seems that shortly after this time Scotty and his wife moved to Texas leaving J. A. McKelroy in the house. Following this, McKelroy paid the rent for May 1956; In June (same year) he paid $23 and $7 on separate occasions; then McKelroy asked to have the rent reduced and Minnie F. Antrim made a reduction of $5 per month; and after that McKelroy made rent payments on June 12, August 20, September 26, September 28, October 2, October 18, and October 30, all in 1956. J. A. McKelroy admits paying rent. Conde testified that McKelroy never said anything about being the owner or about not having to pay rent. It was not until McKelroy got behind with his rent in a sizeable amount and was threatened with eviction that he employed attorneys and

filed this suit on January 11, 1957, to cancel the deeds. We feel that these acts on the part of J. A. McKelroy clearly amounted to a ratification of the deed to his son.''

At the hearing after the case was remanded the appellant testified substantially as he had testified in the original case. He admitted that he had paid rent on the property, admitted that appellee's agent, Conde, told him that the rent was $30 per month, and also admitted that he had asked Conde for a reduction. The only other witness testifying at the second hearing was the attorney who referred this case to appellant's present attorney. His testimony is substantially to the effect that McKelroy lacked the mental capacity to know what acts he had performed or to understand the consequences of them. That, of course, is not an issue in this case since this question was settled in the original opinion of this Court where it said:

''In view of the above medical testimony and in view of other lay testimony and certain facts to be later noted, we cannot escape the conclusion that appellee had regained normalcy (to the extent of understanding ordinary business transactions) as early as October 18, 1955. . . .''

The only issue here presented is whether appellant ratified the deed at a time when he had sufficient mental capacity to ratify it.

The Chancellor's opinion held that it had been established that appellant had been paying rent, and that the testimony was insufficient to rebut the presumption that such payments constituted a ratification of the sale to the appellee. After a careful review of the record, we cannot say that the Chancellor's holding was against the weight of the evidence.

Affirmed.