Brenda COLEMAN, et al. *v.* Agnes COLEMAN, et al.

CA 97-11                                                    955 S.W.2d 713

Court of Appeals of Arkansas
Division III
Opinion delivered November 19, 1997

*Charles J. Lincoln*, for appellants.

*Willie E. Perkins, Jr.*, for appellees.

JOHN F. STROUD, JR., Judge. This case involves a controversy over entitlement to the property of the late Quincy Coleman. Appellant/cross-appellee Brenda Coleman is the widow of

Armnee Coleman, one of Quincy's sons. Appellees/cross-appellants are the other eight children of Quincy Coleman. During Quincy's lifetime, he placed Armnee's name on his checking and savings accounts and on the title to his vehicle. Additionally, he deeded his house to "Armnee Coleman, Trustee." When Quincy died in 1995, Armnee claimed ownership of the accounts, the vehicle, and the house. The other eight children alleged that Armnee had gained his purported ownership of the property through deception and coercion. On November 9, 1995, they filed a petition in Garland County Chancery Court seeking the imposition of a constructive trust. Armnee Coleman died during the pendency of the action and his wife, Brenda Coleman, was substituted as a party individually, as next friend of her daughter, Haley, and as executrix of Armnee's estate.

After a hearing, the chancellor found that it was not necessary to decide whether a constructive trust should be imposed on the bank accounts because Quincy Coleman lacked the mental capacity to enter into the depositor's contract whereby he placed Armnee's name on the accounts. She further found that it had not been proven that Quincy, in placing Armnee's name on the accounts, intended to make a gift to Armnee. She therefore ordered that the $72,181.78 in the accounts at the time of Quincy's death be returned to Quincy's estate. Regarding the house and the vehicle, the chancellor found that they should be awarded to Armnee's wife and daughter on the grounds that appellees/cross-appellants failed to prove by clear and convincing evidence that a constructive trust should be imposed. Appellants/cross-appellees appeal from that part of the chancellor's order pertaining to the bank accounts. Appellees/cross-appellants appeal from that part of the order pertaining to the house and the vehicle. We reverse and remand on direct appeal and affirm on cross-appeal.

### Direct Appeal

Quincy and Lois Coleman were the parents of nine children. Lois Coleman died on December 13, 1987. Shortly after her death, Quincy Coleman, accompanied by Armnee, removed Lois's name from their checking and savings accounts and changed

the accounts to reflect "Quincy Coleman or Armnee Coleman" as joint owners. Within a few days after this transaction, Quincy was admitted to the hospital suffering from grief reaction along with probable malnutrition and associated delirium. He remained hospitalized until January 10, 1988. According to various neighbors and relatives, Quincy was distraught over his wife's death and suffered from depression and confusion. The youngest of the Coleman children, Bernard, returned home from college to take care of his father for several months. Bernard likened his task to taking care of a two-year-old. However, he stated that Quincy was back to normal by the summer of 1988.

In 1990 or 1991, Bernard Coleman had a discussion with his father regarding the bank accounts. He learned that Armnee's name had been placed on the accounts. He told his father that he foresaw a family fight over the money and that "as far as I'm concerned I could care less about the money, they can stick it." According to Bernard, his father told him not to be that way and that the money was as much his as anyone else's. On another occasion, Quincy told Bernard that the only reason he didn't put his name on the checking account was that he was still in college.

In 1992, Quincy inherited over $96,000 from his sister. He deposited the money into the checking and savings accounts bearing his and Armnee's names. A few days later, approximately $20,000 was withdrawn from the savings account and used to purchase a new car. The car was titled in the names of Quincy or Armnee Coleman.

On appeal, appellants concede that Quincy Coleman was mentally incompetent at the time he placed Armnee's name on the bank accounts. However, they argue that subsequent events, *i.e.*, Quincy's acknowledgment to Bernard that Armnee's name was on the accounts, Quincy's deposit of the inheritance money into the accounts, the purchase of the jointly owned vehicle with funds from the accounts, along with the fact that bank statements bearing both names were sent monthly to Quincy's residence, constitute a ratification of Quincy's previously invalid action.

We review chancery cases *de novo* on the record and do not reverse a chancellor's finding unless it is clearly erroneous.

*Smith v. Whitener*, 42 Ark. App. 225, 856 S.W.2d 328 (1993). A finding is clearly erroneous if, upon our review, we are left with the firm conviction that a mistake has been committed. *Id.* Our review in this case leaves us with the firm conviction that the chancellor erred in disregarding the appellant's ratification argument. It is well established that a person who commits an act while lacking the mental capacity to do so may nevertheless affirm or ratify that act once he regains his capacity. *Heskett v. Bryant,* 247 Ark. 790, 447 S.W.2d 849 (1969); *Antrim v. McKelroy,* 229 Ark. 870, 319 S.W.2d 209 (1958); *Brandon v. Bryeans,* 203 Ark. 1117, 160 S.W.2d 205 (1942). We have also recognized that silence or acquiescence in a contract for any considerable length of time amounts to ratification. *Kinkead v. Union Nat'l Bank,* 51 Ark. App. 4, 907 S.W.2d 154 (1995). In this case, testimony by one of the appellees, Bernard Coleman, reveals that Quincy Coleman had regained his mental capacity by the summer of 1988. Certainly, for the chancellor to be consistent in her ruling, Quincy was mentally competent by August of 1990, the date on which he deeded his house to Armnee. The chancellor found no lack of capacity in that transaction. Quincy did not die until May 1995, which means that he lived in a competent state between five and seven years without removing Armnee's name from his accounts. Further, he transferred other property to Armnee during that period and acknowledged to Bernard in 1990 or 1991 his awareness that Armnee's name was on the accounts. Finally, Quincy placed a great deal of money into the accounts in 1992, a time when, according to Bernard's testimony, he was aware that Armnee's name was on the accounts. With this evidence in mind, we must hold that the chancellor's failure to find that Quincy Coleman ratified his transaction was clearly erroneous.

The chancellor also erred in finding that appellants were not entitled to the accounts because Quincy did not intend to make a gift of the accounts to Armnee. One requirement of an *inter vivos* gift is that the donor must unconditionally release all future dominion and control over the property. *See Estate of Sabbs v. Cole,* 57 Ark. App. 179, 944 S.W.2d 123 (1997). We recognize that Brenda Coleman testified that, while Quincy was alive, Armnee never took money from the accounts without Quincy's

permission. However, appellants do not claim their right to ownership of the accounts by virtue of an *inter vivos* gift from Quincy to Armnee; their claim is based upon Armnee's survivorship right as a joint tenant. Therefore, the chancellor was wrong in denying appellants' claim on the grounds that they did not prove the requirements of an *inter vivos* gift.

Since we reverse on direct appeal, we do not find it necessary to reach appellants' second argument regarding an award of attorney fees and calculation of the amount to be paid to the estate of Quincy Coleman.

### Cross-Appeal

On cross-appeal, it is argued that the chancellor erred in failing to impose a constructive trust on the house that Quincy deeded to Armnee and on the car that was titled in both Quincy's and Armnee's names. Quincy executed the deed to the house in August 1990. According to attorney Richard Wootton, Armnee contacted him and told him Quincy wanted to transact some business regarding his real property. Shortly thereafter, Armnee and Quincy visited Wootton at his office. According to Wootton, he was not sure at first what Quincy wanted to do with the house; Quincy kept mentioning the word "trust." Wootton explained to him that a trust would entail the drafting of a separate trust document. Quincy did not want such a document, so Wootton told him he could prepare a deed conveying the property to "Armnee Coleman, Trustee." However, he explained to Quincy that the use of the word "trustee" would have no legal effect; the deed would operate as an outright conveyance to Armnee. According to Wootton, he spent an hour to an hour and a half with Quincy on the matter. Quincy indicated he understood that Armnee would have full title to the property.

There is no evidence in the record regarding the circumstances surrounding the placement of Armnee's name on the car title other than the fact that Quincy paid cash for the car with money withdrawn from his and Armnee's joint accounts.

Again, we acknowledge that our review is *de novo* and that we will not reverse a finding by the chancellor unless it is

clearly erroneous. *Smith v. Whitener, supra.* We find no error on cross-appeal. Cross-appellants argue that evidence of undue influence exercised by Armnee mandates imposition of a constructive trust. However, the record supports the chancellor's finding that no undue influence was proven with regard to either of these transactions. Attorney Wootton's testimony reveals that he fully explained to Quincy the legal ineffectiveness of the use of the word "trustee" in the deed and that, as a result, title to the property would pass to Armnee. Further, there was testimony by other witnesses that Quincy wanted Armnee to have the house because Armnee had done so much to take care of him. Cross-appellants attack the credibility of these witnesses, but we defer to the superior position of the chancellor on credibility questions. *O'Flarity v. O'Flarity*, 42 Ark. App. 5, 852 S.W.2d 150 (1993). Regarding the car title, as we have already noted, there was virtually no evidence regarding the placement of Armnee's name on the title.

■ Finally, cross-appellants ask us to "judicially repeal" Ark. Code Ann. § 18-12-604 (1987), the statute which provides that the appearance of the word "trustee" in a deed, without other language showing a trust, shall simply vest title in the grantee. Cross-appellants point to no constitutional infirmity in the statute, nor do they offer any authority for their argument. Assignments of error unsupported by convincing argument or authority will not be considered on appeal. *Rogers v. Rogers*, 46 Ark. App. 136, 877 S.W.2d 936 (1994).

Reversed on direct appeal; affirmed on cross-appeal.

BIRD and GRIFFEN, JJ., agree.