Shirley Lee SMITH *v.* Nona WELCH

80-59                                                    597 S.W. 2d 593

Supreme Court of Arkansas

Opinion delivered April 28, 1980

*Leon N. Jamison,* for appellant.

*Owens & Fikes,* for appellee.

JOHN I. PURTLE, Justice. Two wills were presented to the Jefferson County Probate Court to determine which of the two instruments was the last will and testament of Lamar Cannon, decedent. One will was dated October 13, 1977, and designated Shirley Smith, appellant herein, as primary beneficiary and executrix. The other will was dated October 26, 1978, and designated Mildred Horton as beneficiary and executrix. The probate court admitted the will dated October 26, 1978. Appellant brings this appeal.

We think the trial court was in error in admitting the will of October 26, 1978, and should have admitted the will of October 13, 1977, to probate.

Lamar Cannon was married to Mildred Horton about 24 years. A divorce was granted to the parties in 1958, and Mildred Horton married and divorced twice after the divorce from Lamar Cannon. Sometime during 1977, Mildred Horton moved into the decedent's house to care for him. It was understood she would strictly be his housekeeper. She moved out of Cannon's home about a year before he entered the hospital on October 19, 1978.

On his admission to the hospital, Cannon was too weak and too short of breath to get out of bed; and, he was extremely ill. His attending physician stated that on October 19, 1978, decedent was unable to relate a great deal of his medical history because of his shortness of breath. The doctor also stated that it was reasonably possible that on October 26, 1978, decedent did not know the extent of his property without prompting. From October 19, 1978, until his death, on November 7, 1978, Cannon was confined to the hospital.

Mildred Horton, the ex-wife, contacted the lawyer's office to prepare a will for Lamar Cannon about October 24,

1978; and, she went to the lawyer's office and obtained the will on October 26, 1978. In describing the procurement of the will, she stated:

> I am the person who called the office to have the will made. *** I brought the will out to the hospital on October 26, 1978. I obtained the will from Horace Fikes' office. I read it to him and told him what was in it. I went down the hall and got Virginia Broach and Marsha Zibley to come down to witness his signing it. Virginia and Marsha were present when I read it.*** He (decedent) did not tell the witnesses what the document was that he was executing.

One of the witnesses, Marsha Zibley, stated that Mr. Cannon said he knew what he was signing and he said that Mildred Horton read the will to him. She further stated that the testator never said the instrument was his last will. She did not read the document herself. She explained that the decedent looked awfully tired and worn out and that he seemed to be fatigued, tired, and short of breath. Further, she did not see Virginia Broach, the other witness, sign the document. Decedent never requested Marsha Zibley to witness the will. She signed it at the request of Mildred Horton.

The other witness, Virginia Broach, stated that she also acted upon the request of Mildred Horton. She testified that she saw decedent sign the will and that she signed it after Marsha signed, although she did not see Marsha sign the document. She related that Mr. Cannon did not talk about the extent or nature of his property, and she did not hear the will read to him. He did not tell her it was his will. Her statement was: ". . . I figured that if he wanted us to know he would have told us so."

So far as can be determined from the record, the will dated October 13, 1977, was in full compliance with the statutory requirements. In fact, the decedent named each of his children in this will and explained why he left the bulk of his property to his daughter, Shirley Smith. On the other hand, the will of October 26, 1978, never mentioned his children by name or stated how many children he had.

The secretary for attorney Fikes testified that she had typed two wills for Lamar Cannon at the direction of Mildred Horton. The will she typed in 1976 is not in question in this matter.

Attorney Fikes testified that he did not know Lamar Cannon and that he had only one telephone conversation with Cannon in relation to the 1976 will. He verified that Mildred Horton had contacted him in reference to writing the 1978 will in which she was named beneficiary.

We are in full accord with the appellee's argument that a strict technical construction of a will is to be avoided where there is no indication of fraud, deceit, or undue influence. *Walpole* v. *Lewis,* 254 Ark. 89, 492 S.W. 2d 410 (1973). In the absence of undue influence, fraud, deceit, or other valid reason, we apply the preponderance of the evidence rule in the matters relating to the execution of a will.

Where the beneficiary obtains the will, a different rule applies. In fact, we stated in *Short* v. *Stephenson,* 238 Ark. 1048, 386 S.W. 2d 501 (1965):

> Where a beneficiary, under the terms of a will, procures the making of the will, there is a rebuttable presumption of undue influence, and "it is incumbent upon those who, in such a case, seek to establish the will, to show beyond reasonable doubt, that the testator had both such mental capacity, and such freedom of will and action as are requisite to render a will legally valid."***

In the more recent case of *Greenwood, Guardian* v. *Wilson, Adm'x.,* 267 Ark. 68, 588 S.W. 2d 701 (1979), we stated:

> In the case of *Hiler* v. *Cude,* 248 Ark. 1065, 455 S.W. 2d 891 (1970), we were asked to hold that our decision in *Orr* [v. *Love,* 255 Ark. 505, 283 S.W. 2d 607] meant that the burden of proof shifted where a proposed will is drafted by a beneficiary. That same argument is made by the appellant Greenwood. That is, normally a contestant must prove undue influence and mental incapacity; whereas a beneficiary-drawn will must be

shown beyond a reasonable doubt to be free from undue influence and made by a mentally capable person. *** There is no doubt the burden was on the appellee to prove beyond a reasonable doubt that John Wilson was not unduly influenced and that he had the mental capacity to make this will.

It is obvious from the above-quoted cases that the burden was upon Nona Welch, appellee, to prove beyond a reasonable doubt that the decedent had the mental capacity to make a will and that he was not unduly influenced by the beneficiary. The proponents of the October 26, 1978, will have simply fallen far short of the burden required to prove this will was executed by a person who had the mental capacity and freedom of will to execute the instrument.

The case will be reversed and remanded to the Jefferson Probate court with directions to admit the will dated October 13, 1977, as the last will and testament of decedent Lamar Cannon.

Reversed and remanded.