Jerry NOLAND and Anita Delores Shaver, Trustees of the Wesley E. Noland Irrevocable Trust, et al. *v.* Claude NOLAND

CA 95-167                                              934 S.W.2d 940

Court of Appeals of Arkansas
En Banc
Opinion delivered December 11, 1996
[Petition for rehearing denied January 15, 1997.]

*James G. Lingle*, for appellants.

*Davis & Watson, P.A.*, by: *Charles E. Davis*, for appellee.

WENDELL L. GRIFFEN, Judge. This case involves a challenge to a chancellor's decision that the appellants procured a trust and related warranty deed from Wesley E. Noland, deceased, and failed to prove beyond a reasonable doubt that Noland possessed the requisite mental capacity and acted without undue influence when he created the Wesley E. Noland Irrevocable Trust and conveyed his one-third interest in a family farm to it. The chancellor also determined that a joint tenancy with right of survivorship could not be destroyed by conveyance. Although we hold that the chancellor erred on the latter issue, his error was harmless because his decision that appellants failed to meet their burden of proof of mental capacity and lack of undue influence concerning conveyances between Wesley Noland and the Wesley E. Noland Irrevocable Trust was not clearly erroneous. Therefore, we affirm.

Wesley Noland and his wife Elsie had four children (daughters Anita Shaver and Helen Hooton, and sons Jerry and Claude Noland). On January 21, 1974, Wesley Noland and Elsie Noland executed a deed that created a joint tenancy with right of survivorship to their eighty-two-and-one-half-acre family farm in themselves and their sons (Jerry and Claude). Apparently, this conveyance was made to keep the husband of one of the daughters from becoming involved in the family estate, and made in the belief that the sons would treat their sisters equitably insofar as the farm was concerned. Wesley Noland is alleged to have later become concerned that Claude Noland would not share the farm with his sisters. Wesley Noland was told by an attorney that the joint tenancy could not be dissolved without the agreement of all the joint tenants, including Claude Noland.

In August 1991 another lawyer concluded that a joint tenant with a right of survivorship could convey his interest to a third entity, thereby converting the joint tenancy with right of survivorship into a tenancy in common. Acting on this advice and the encouragement of Jerry Noland and Anita Shaver (after the death of Elsie Noland), Wesley Noland established the Wesley E. Noland Irrevocable Trust on September 27, 1991. Wesley Noland also executed a warranty deed that transferred his one-third interest in the farm to Jerry Noland and Anita Shaver as Trustees of the Trust (which had as its beneficiaries Jerry Noland, Anita Shaver, and Helen Hooton). Jerry Noland then executed a warranty deed that transferred his one-third interest into the Trust. The Trust also

provided that Claude Noland (who lived with Wesley) would have a life estate in the farm residence and lands, and an undivided one-third interest in the remainder.

Claude Noland did not know about the Trust and related conveyance until he went to pay taxes on the property after Wesley Noland died. He then brought suit to set aside the Trust and related conveyance, arguing that Wesley Noland lacked mental capacity to establish the Trust, and that the Trust and related conveyance resulted from undue influence by Jerry Noland and Anita Shaver. Following a hearing on April 20, 1994, the chancellor held that Jerry Noland had procured the Trust so that he had the burden of proving beyond a reasonable doubt that Wesley Noland had mental capacity and was not under undue influence concerning it and the related conveyance. The chancellor held that Jerry Noland failed to meet that burden, so the conveyance was set aside. He also ruled that even if he held that the defendants had met their burden on the mental capacity and undue influence issues, a joint tenancy with right of survivorship cannot be destroyed by conveyance.

Jerry Noland and Anita Shaver, Trustees of the Wesley E. Noland Irrevocable Trust, and as beneficiaries with Helen Hooton, have appealed the chancellor's decision voiding the Trust and related conveyance. They argue that the chancellor erred by holding that the Trustees had procured the Trust and warranty deed from Wesley Noland, and that the chancellor erred by shifting the burden of proof to them on the issues of lack of mental capacity and undue influence regarding the Trust and related warranty deed by Wesley Noland. Appellants also argue that the chancellor applied the incorrect legal standard for analyzing the mental capacity issue. Appellants finally argue that the chancellor erred in holding that a joint tenant may not convey his interest to a stranger and defeat the survivorship rights of other joint tenants as to the conveyed interest.

Most of the abstract and record deals with the mental capacity and undue influence issues, allegations by appellants that Claude Noland was abusive toward Wesley Noland during his last years, and Claude Noland's counterallegations that appellants were not around Wesley Noland enough to appreciate the extent of his alleged incompetency. The record certainly demonstrates that these siblings appear to be living out hostilities and long-held conflicts dating back many years. Suffice it to say that the chancellor had considerable conflicting proof concerning Wesley Noland's mental state in

1991, the allegations of mistreatment and verbal abuse by Claude Noland (which in some instances clearly appear to have been substantiated by his own conduct and testimony), and proof concerning tactics employed by Jerry Noland and Anita Shaver concerning the creation of the Wesley E. Noland Irrevocable Trust and the conveyance of Wesley Noland's one-third joint interest in the farm into it.

■ However, the threshold issue is whether Jerry Noland procured the Trust and warranty deed from Wesley Noland to the Trust. In an ordinary challenge to the validity of a will, the party contesting its validity must prove by a preponderance of the evidence that the testator lacked mental capacity or was unduly influenced at the time the will was executed. *Baerlocker* v. *Highsmith*, 292 Ark. 373, 730 S.W.2d 237 (1987). This principle also applies to other testamentary instruments. However, where a beneficiary of a testamentary instrument actually drafts or procures it, Arkansas law applies a higher burden of proof and shifts the burden onto the proponent of the instrument. In *Greenwood* v. *Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979), the Arkansas Supreme Court held that a proponent of a will who is a beneficiary and who drafted the will or caused it to be drafted must prove beyond a reasonable doubt that it was not the result of undue influence and that the testator had the mental capacity to make it. In *Smith* v. *Welch*, 268 Ark. 510, 597 S.W.2d 593 (1980), the supreme court again held that where a beneficiary procures the making of a will, it bears the burden of showing beyond a reasonable doubt that the testator had both mental capacity and such freedom of will and actions as are required to render a will legally valid. *See also Looney* v. *Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992).

Under the clearly erroneous standard of review, we are unable to reverse the chancellor's finding of procurement. A de novo review of the record shows that Jerry Noland arranged all of the meetings between his father and counsel regarding creating the Trust. The trust documents were prepared by counsel selected by Jerry and were delivered to Jerry rather than to Wesley Noland. The lawyer who drafted the trust documents explained them to Jerry rather than to Wesley Noland. Jerry, in turn, explained the Trust documents to Wesley Noland and appears to have coached him regarding the documents before covertly arranging with Anita Shaver to take Wesley Noland to the lawyer's office where the

documents were executed.

■■ Because the Court of Appeals reviews equity appeals de novo, we will affirm a chancellor's decision if it is correct for any reason. *Lyons v. Lyons*, 13 Ark. App. 63, 679 S.W.2d 811 (1984). In *Park v. George*, 282 Ark. 155, 667 S.W.2d 644 (1984), the Supreme Court of Arkansas reversed a decision by a probate judge who admitted a will to probate and held that the probate court erred in placing the burden of proof regarding lack of mental capacity and undue influence on the will contestants rather than its proponents. Hence, the chancellor's ruling that the burden shifted to appellants to prove beyond a reasonable doubt that Wesley Noland was mentally competent and acted with free will when the Trust was created and he executed the warranty deed conveying his joint interest into it should be affirmed.

It is inconsequential that Jerry Noland's interest in the farm was reduced from a one-third joint interest with right of survivorship to a two-ninths interest as a tenant in common by the trust and warranty deed. The crucial factor is that he was a beneficiary of an instrument that he caused to be drafted, whatever his pro rata interest happened to be and for whatever purposes he may have procured its drafting. Although Jerry Noland's pro rata interest in the family farm decreased from one-third to two-ninths under the purported transactions, the two-ninths interest would have been held as a tenant in common. As such, Jerry Noland would have attained an arguably preferable position because his two-ninths interest did not depend upon the right of survivorship. Whether he outlived Wesley and Claude Noland or not, the purported transactions meant that he had two-ninths of the land, and that he and Anita Shavers would have controlling voice in its disposition because of their positions as Trustees of the Wesley E. Noland Irrevocable Trust, which would have owned two-thirds interest in the land as tenant in common with Claude Noland. When one considers that Anita Shavers had no legal interest in the land and no voice in its management under the joint tenancy arrangement that Wesley Noland originally established with Jerry and Claude Noland, it is undeniable that Jerry Noland and Anita Shavers were beneficiaries of the warranty deed and trust instruments, both in the legal and practical senses.

We find no Arkansas authority that restricts the principle that the proponent of a testamentary instrument who is a beneficiary of

that instrument must obtain a larger interest in property than he would otherwise hold before the burden of proof shifts regarding the mental capacity and free will of the testator. Rather, we understand the law to be that if the proponent is a beneficiary, the duty to prove that the instrument was created free of undue influence and by a person competent to do so shifts to the benefiting proponent, and that the quantum of proof rises from preponderance of the evidence to proof beyond a reasonable doubt on those issues.

■ We further hold that the chancellor's finding that appellants did not prove beyond a reasonable doubt that Wesley Noland possessed mental capacity and acted without undue influence regarding the Trust and related conveyance of his joint interest was not clearly against the preponderance of the evidence. There is great disagreement between the parties concerning Wesley Noland's capacity after his wife died in 1991, but it is not our duty to decide this issue de novo. We conduct a de novo review of the record to determine whether the chancellor's ruling on this point is clearly against the preponderance of the evidence. Whatever Wesley Noland's mental state may have been in 1974, or between 1974 and 1991 when the Trust was created and the challenged conveyance took place, the controlling question is whether he possessed mental capacity and acted without undue influence when the Trust was created and he conveyed his joint interest into it in September of 1991. Given the considerable proof that Noland was unable to be trusted with even menial tasks around his house and farm, the chancellor's ruling that appellants failed to prove beyond a reasonable doubt that he acted with the requisite mental capacity and without undue influence is not clearly erroneous.

■ Although the chancellor did err as a matter of law when he held that a joint tenant cannot convey his joint interest to a stranger to the joint tenancy, that error was harmless. Granted, the conveyance of Wesley Noland's undivided one-third joint interest to the Trust would have dissolved the survivorship rights of his joint tenants as to that conveyed interest (assuming that Noland was competent and acting of his own free will when he conveyed his interest to the Trust). Even so, Arkansas law does not prohibit a joint tenant from conveying his interest to a stranger, and we have not been cited to any authority holding that such a conveyance requires the assent of the other joint tenants. Rather, had Noland acted with requisite competency and freedom of will, his one-third

joint interest in the farm would have been conveyed to the Trustees as a tenancy in common pursuant to Ark. Code Ann. § 18-12-603 (Repl. 1987). Given that Jerry Noland conveyed his one-third interest in the farm to the Trust as well, the effect of both transactions would have been that Claude Noland would have held a life interest (pursuant to the other conveyances and the original 1974 deed creating the joint tenancy) in the farm, and his undivided one-third interest in the remainder. That one-third interest would not have been with right of survivorship, however, because the unities of title, time, and interest would not have been present between Claude Noland and the Trust. The practical effect of the purported conveyances in this instance would have been to dissolve the joint tenancy and create a tenancy in common between Claude Noland and the Trust. Given the invalidity of the conveyance by Wesley Noland to the Trust, the chancellor's mistaken view of the law amounts to harmless error.

The chancellor's decision is affirmed.

PITTMAN and ROGERS, JJ., agree.

ROBBINS, MAYFIELD, and STROUD, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. I disagree with the prevailing opinion in two respects. First, I believe that the chancellor erred in shifting the burden of proof from Claude Noland to the defendants. Appellee Claude Noland brought this action seeking to set aside Wesley Noland's trust and warranty deed. The appellants defended the action contending that the trust and warranty deed were legitimate expressions of Wesley Noland's intent. Secondly, I do not believe that the trial court held that a joint tenant cannot convey his joint interest to a third party and by so doing dissolve the joint tenancy.

The chancellor found that Jerry Noland procured the trust agreement and warranty deed. This finding was not clearly erroneous. However, I disagree that the presumption requiring a shifting of the burden of proof was applicable to the facts of this case. The general rule is set forth in 79 Am. Jur. 2d *Wills* § 429, p. 579, and is expressed as follows:

> Most of the authorities support the view that a presumption of undue influence arises upon a showing that one who drew the will, or was otherwise active directly in preparing it or

procuring its execution, *obtains under the will a substantial benefit, to which he has no natural claim, or a benefit which, in amount, is out of proportion to the amounts received by other persons having an equal claim to participate in the bounty of the testator.* (Emphasis added.)

Arkansas courts have recognized this rule of law since 1858. *McDaniel* v. *Crosby*, 19 Ark. 533 (1858). In every instance, however, where the burden of proof is shifted to the procurer of the document to prove beyond a reasonable doubt that the testator had both mental capacity and freedom of will at the time of execution of the will the procurer gained a greater share of the testator's estate by virtue of the will than the procurer would have otherwise received. *Looney* v. *Estate of Wade*, 310 Ark. 708, 809 S.W.2d 531 (1992) (procurer, unrelated to the testatrix, was owner and administrator of the residential care center where the testatrix lived); *Park* v. *George*, 282 Ark. 155, 667 S.W.2d 644 (1984) (procurers, lawyers who prepared the will, received a $7,000 fee at the time the will was signed and one of them was bequeathed $10,000 under the will); *Oliver* v. *Griffe*, 8 Ark. App. 152, 649 S.W.2d 192 (1983) (although procurer was testator's daughter, testator had disinherited her under an earlier will); *Smith* v. *Welch*, 268 Ark. 510, 597 S.W.2d 593 (1980) (procurer was ex-wife of testator, having divorced testator twenty years before will was procured); *Greenwood* v. *Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979) (procurer, testator's second wife, was devised the testator's entire estate to the exclusion of testator's children); *Short* v. *Stephenson*, 238 Ark. 1048, 386 S.W.2d 501 (1965) (procurer was only a friend of the testator); *Orr* v. *Love*, 225 Ark. 505, 283 S.W.2d 667 (1955) (procurer was testator's daughter-in-law); *McDaniel* v. *Crosby, supra* (procurer, an unrelated drinking buddy of testator, was sole devisee to the exclusion of the testator's relatives).

I submit that this factual element is a prerequisite to the rule requiring a shifting of the burden of proof.[1] I further submit that this circumstance is lacking in the case now before us.

---

[1] A similar contention was asserted by a testator's daughter in *Oliver* v. *Griffe, supra.* However, in that case she contended that the presumption should only arise if the procurer of the will received more benefit under it than she would have received had the testator died intestate. We pointed out that her argument overlooked the fact that the testator had disinherited this daughter under an earlier will. Consequently, she received a significant benefit under the procured will that she would not have otherwise received.

The only significant asset owned by Wesley Noland that is now in dispute is his home, and an approximately 82-acre farm where it sits. Long before execution of the trust agreement and deed involved in this appeal, Wesley Noland and his wife conveyed title to their farm into a joint tenancy with their sons, Claude and Jerry. Consequently, at the time the subject documents were executed, Wesley's farm was owned by three joint tenants, Wesley, Claude and Jerry. If Jerry had not procured the execution of the trust agreement and warranty deed, he likely would have been eventually the sole owner of the home and farm inasmuch as he was the youngest of the joint tenants. However, by virtue of the trust agreement and warranty deed signed by Wesley Noland that Jerry procured, and the warranty deed Jerry also executed conveying his interest in the joint tenancy into the trust, Jerry's interest in Wesley's home and farm was reduced to a two-ninths undivided fractional remainder interest in the house and farm. This fractional interest was subject to Wesley's right to receive support from the trust during his lifetime and Claude's right to reside in the house and use the barn and corral for his lifetime. Rather than gaining or benefiting from this transaction, Jerry actually gave up a very significant share of his father's home and farm that he would have otherwise received. Consequently, the presumption requiring a shifting of the burden of proof to the procurer of the documents was not applicable and the chancellor erred in holding to the contrary.

With regard to the issue of whether a joint tenant may legally convey his interest and thus dissolve a joint tenancy, the chancellor expressed doubt as to whether a joint tenant could do so, however the chancellor clearly stated that "I do not reach that issue." Consequently, I do not think that this issue is properly before us.

I would reverse and remand this case with directions that the chancellor decide the case with the proper burden of proof being on appellee, who sought to set aside the trust agreement and warranty deed.

MAYFIELD and STROUD, JJ., join in this opinion.