ESTATE OF Virginia McKASSON, Deceased *v.*
Harvey N. HAMRIC and Iva Hamric

CA 99-940                                    20 S.W.3d 446

Court of Appeals of Arkansas
Division III
Opinion delivered July 5, 2000
[Petition for rehearing denied August 23, 2000.]

*Rice, Adams, Beckham & Pulliam*, by: *Ben E. Rice*, for appellant.

· *Robert M. Abney, P.A.*, for appellees.

JOHN E. JENNINGS, Judge. The Estate of Virginia McKasson brings this appeal from an order denying its petition to set aside two deeds in which the decedent conveyed certain land to the appellees, Harvey and Iva Hamric. For reversal the estate contends that the conveyances were testamentary in nature; that the chancellor erred by not requiring appellees to show beyond a reasonable doubt that the decedent possessed sufficient mental capacity to make the conveyances, because they procured the deeds; and that the chancellor erred in finding that the deceased had the requisite mental capacity to execute the deeds. We affirm.

On October 12, 1996, Mrs. McKasson executed warranty deeds to appellees on two separate tracts of land. One tract con-

sisted of eighty acres; the other contained 113 acres. On the eighty-acre tract, which included Mrs. McKasson's home, appellees executed a note and mortgage in the amount of $160,000.00, at eight-percent interest per annum, payable in installments of $200.00 a month, plus an additional $2,000.00 due on December 31 of each year. The note also provided that the debt would be forgiven at Mrs. McKasson's death. Appellee Harvey Hamric testified that he had these instruments prepared by a lawyer based on notes he had taken from discussions with Mrs. McKasson. Prior to these convey-ances, between May and July 1996, Mrs. McKasson had also made appellee, Iva Hamric, a joint tenant with right of survivorship on several certificates of deposit totaling $143,000.00, as well as her checking account with a balance of $10,000.00. In addition, Mrs. McKasson had executed a power of attorney to Mrs. Hamric in June. The appellees began living with Mrs. McKasson sometime after Mrs. McKasson was injured in a fall in September 1996.

Mrs. McKasson died on October 18, 1997. Her husband had passed away some years before, and she had no blood kin who lived in Arkansas but was survived by distant relatives from Florida and Oklahoma. This action was brought by the administratrix of Mrs. McKasson's estate, Mary Eaton, who is the wife of Mrs. McKasson's deceased brother. In the petition, the estate alleged that Mrs. McKasson was not of sound mind and that the appellees had exerted undue influence over her, and it sought to set aside the two deeds and the transfers of the certificates of deposit and checking account, as well as a mineral deed executed by Mrs. Hamric in September 1997 under the power of attorney. Although the chan-cellor set aside the conveyance of the mineral rights, he found that the estate had failed to carry its burden of proof as to the other transactions.

On appeal, the estate contests the chancellor's findings only with respect to the deeds conveying title to the eighty and 113-acre parcels of land. No argument is made concerning the certificates of deposit or checking account.

■ Appellant first contends that the deeds were testamentary in nature because of the debt-forgiveness provision in the note and because the yearly payments fell well short of the amount of interest that was due annually. A will is a disposition of property that is to take effect upon the death of the maker of the instrument. *Faith v.*

*Singleton,* 286 Ark. 403, 692 S.W.2d 239 (1985). On the other hand, a deed is a grant that operates to pass a present interest in property. *See Parkey v. Baker,* 254 Ark. 283, 492 S.W.2d 891 (1973); 23 Am. Jur. 2d *Deeds* § 8 (1999). Although the debt was to be extinguished at Mrs. McKasson's death, the deed itself conveyed a present interest in the property. We cannot agree that the chancellor should have found the deeds to be a will.

Next, appellant argues that because the appellees "procured" the deeds the chancellor erred in not placing the burden upon them to prove beyond a reasonable doubt that Mrs. McKasson was mentally competent at the time of the execution of the deeds. We disagree. When a beneficiary procures a will it is incumbent upon him to show beyond reasonable doubt that the testator had both the mental capacity and freedom of will to execute the will. *Orr v. Love,* 225 Ark. 505, 283 S.W.2d 667 (1955). This concept in Arkansas dates back at least to *McDaniel v. Crosby,* 19 Ark. 533 (1858). Apparently "procurement" originally meant that the beneficiary himself wrote the will. *See id.* It has been extended to situations in which the beneficiary caused the will to be prepared and participated in its execution. *See e.g., Smith v. Welch,* 268 Ark. 510, 597 S.W.2d 593 (1980). Even in the context of a will, the supreme court has held that "procurement" merely shifts the burden of going forward with the evidence and that the burden of proof, in the sense of the ultimate risk of nonpersuasion, remains on the will contestant. *Hiler v. Cude,* 248 Ark. 1065, 455 S.W.2d 891 (1970). *See also Rose v. Dunn,* 284 Ark. 42, 679 S.W.2d 180 (1984).

■ We attempted to recognize and reconcile the two lines of authority in *Hodges v. Cannon,* 68 Ark. App. 170, 177 5 S.W.3d 89, 95 (1999), when we said:

> In the case of a beneficiary of a will who procures the making of the will, a rebuttable presumption of undue influence arises, which places on the beneficiary the burden of going forward with evidence which would permit a rational fact-finder to conclude, beyond a reasonable doubt, that the will was not the product of insufficient mental capacity or undue influence.

■ The rules relating to an alleged mental incapacity of the grantor of a deed are set out in *Watson v. Alford,* 255 Ark. 911, 503 S.W.2d 897 (1974). The burden of proving mental incapacity rests upon the person seeking to set aside the deed. The burden of proof

is by a preponderance of the evidence. *Id.* at 913. The fact that a grantor is old and in feeble health is a circumstance bearing on the question of mental capacity as is gross inadequacy of the purchase price. *Id.* at 912. Each case dealing with mental capacity must be decided on its own peculiar facts and circumstances. *Id.* at 913.

■ Appellant relies on *Neal v. Jackson*, 2 Ark. App. 14, 616 S.W.2d 746 (1981), and *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997), for the proposition that one who procures a deed has the burden of proving mental capacity and a lack of undue influence. The language in *Neal*, upon which appellant relies, was dicta. *Noland* involved an *inter vivos* trust with title to the real property to pass at the time of the settlor's death. It simply cannot be the law that in an ordinary deed transaction the grantee bears the burden of proving the grantor's mental capacity and his freedom from undue influence merely because the grantee has caused the deed to be prepared.

■ It is true that in certain circumstances a presumption of undue influence may arise in connection with the execution of a deed. *See Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). (A gift to the dominant party in a confidential relationship.) Appellant does not contend that *Myrick* applies here. Our conclusion is that the trial court did not err in placing the burden of proof upon the appellant.

■ Finally, appellant argues that the chancellor erred in finding that Mrs. McKasson possessed sufficient mental capacity to execute the deeds. The law regarding mental capacity in the execution of a will is also applicable to the execution of a deed. If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). Evidence of the grantor's mental condition, both before and after the execution of the deed, is relevant to show his mental condition at the time he executed the deed. *Hodges v. Cannon*, 68 Ark. App. 170, 5 S.W.3d 89 (1999).

At trial, a number of Mrs. McKasson's longtime friends and neighbors testified that, to avoid going to a nursing home, Mrs. McKasson planned to have someone move in with her and that, in exchange, she intended to give her property to her care givers. The appellees had known Mrs. McKasson since 1978 and had rented pastureland on the eighty acres since 1990. Mrs. Hamric testified that she became closer to Mrs. McKasson when bringing her food during an illness in 1995 and that she saw her more often in 1996 when she started taking Mrs. McKasson to the doctor.

April Eagle, a vice president at the institution where Mrs. McKasson did her banking, handled the placement of Mrs. Hamric's name on Mrs. McKasson's accounts. She testified that Mrs. McKasson explained to her that she was single, old, and had no close heirs, and that the appellees had been good to her. Ms. Eagle said that Mrs. McKasson had brought the certificates of deposit to the bank with her, that she was aware of her assets, that she knew exactly what she was doing, and that she was not confused. To summarize the testimony of other witnesses, it was said that Mrs. McKasson was old and hard of hearing and that she drank beer, but that she was a sharp lady and mentally alert, and that she could not be talked into doing what she did not want. There was further testimony that Mrs. McKasson was happy that the appellees were living with her and that she was pleased to have her estate in order. Charlotte Wrigley, who had known Mrs. McKasson for twenty-five years and was the notary public who witnessed the signing of the deeds, testified that Mrs. McKasson was alert and knew what property she was transferring and to whom she was transferring it. Finally, Dr. Jerry Mann, who began treating Mrs. McKasson in July 1997, testified that he did not consider her incompetent the first time he saw her but that she showed signs of some sort of mental status problem during her second visit in August. He did not pinpoint a cause but surmised that if she had been suffering from an organic brain disorder, like Alzheimer's, it might have gotten worse over the past year, although Alzheimer's is a disease that progressed slowly in its early stages.

For reversal, the estate questions the credibility of various witnesses and places much emphasis on Mr. Hamric's testimony concerning the conveyance of the entire eighty-acre tract when it was said that Mrs. McKasson had spoken of giving Mrs. Hamric the house and five acres. The estate also emphasizes the testimony of

Dr. Leslie Anderson, a family physician who treated Mrs. McKasson for various illnesses until she came under the care of Dr. Mann. Dr. Anderson made a diagnosis of organic brain syndrome in June 1996. He testified that Ms. McKasson was experiencing the early stages of the disease, which he said was one that grows progressively worse over time. It was his opinion that from that time onward there was "a high degree of suspicion" that she would not be able to handle her affairs or to take care of herself. Dr. Anderson testified, however, that he probably would not have said that she was incompetent in June 1996, that he was only guessing as to what her condition might have been down the line, that it could change from day to day, and that there was a fifty-fifty chance, depending on the type of day she was having, that she would not have understood the transactions.

■ ■ Although chancery cases are reviewed de novo on appeal,we do not reverse a chancellor's finding of fact unless it is clearly erroneous. See Belcher v. Stone, 67 Ark. App. 256, 998 S.W.2d 759 (1999). We defer to the superior position of the chancellor to judge the credibility of the witnesses. Aycock Pontiac, Inc. v. Aycock, 335 Ark. 456, 983 S.W.2d 915 (1999). From our de novo review, we cannot say that the chancellor's finding is clearly erroneous.

Affirmed.

NEAL and GRIFFEN, JJ., agree.