Jane STANLEY and Rose Mary Lattin  *v.*  Scottie L. BURCHETT
and Dick W. Burchett

CA 05-76                                            216 S.W.3d 615

Court of Appeals of Arkansas
Opinion delivered November 9, 2005

*Baxter, Jensen, Young & Houston*, by: *Ray Baxter*, for appellant.

*Boswell, Tucker, Brewster, & Davis*, by: *John Andrew Ellis*, for appellee.

JOHN B. ROBBINS, Judge.  In this case, appellants Jane Stanley and Rose Mary Lattin filed suit seeking to set aside certain

deeds executed by their stepfather Damon Utley in favor of appellees Scottie Burchett and her husband, Dick Burchett.[1] Scottie is one of Utley's daughters. At the close of Jane and Rose Mary's proof, the trial court granted Scottie's motion for a directed verdict on the basis that they had not shown that Utley lacked capacity to execute the deeds. Jane and Rose Mary now appeal, arguing that, because Scottie procured the deeds, the trial court should have shifted the burden of proof to her to prove that Utley had the capacity to execute the deeds. On cross-appeal, Scottie argues that the trial court erred in failing to award her attorney's fees under Ark. Code Ann. § 16-22-309 (Repl. 1999), asserting that there was a complete absence of a justiciable issue of either law or fact raised by Jane and Rose Mary. We affirm on both direct appeal and on cross-appeal.

In November 2000, Utley executed a will devising, *inter alia*, a mobile-home park to Rose Mary, Jane, and Scottie in equal shares. In January 2003, Utley executed a second will devising the mobile-home park and another lot solely to Scottie. In the second will, Utley left only his "love and affection" to Jane and Rose Mary and to his other daughter, Brenda Faye Eden. On February 4, 2003, Utley executed the deeds at issue, conveying certain property to himself, Scottie, and Dick as joint tenants with right of survivorship. Utley died on February 14, 2003, survived by his wife, Carolyn Utley, and his daughters, Scottie and Brenda Faye Eden.[2]

In their complaint, Jane and Rose Mary alleged that, under the November 2000 will, they had an interest in the property, that the deeds were testamentary in nature, and that Utley lacked the requisite capacity to execute the deeds. The complaint also alleged that Scottie procured the deeds and exercised undue influence over her father because of their confidential relationship. Scottie answered, denying the material allegations of the complaint and asserting that the January 2003 will superseded the November 2000 will, thereby depriving Jane and Rose Mary of any claimed interest in the property. Scottie also sought attorney's fees under Ark. Code Ann. § 16-22-309 (Repl. 1999), asserting that the suit was void of any justiciable issue of law or fact and that Jane, Rose Mary, and their attorney knew or should have known that the action was without a reasonable basis in law or equity.

---

[1] We refer only to Scottie Burchett unless the context otherwise requires.

[2] Scottie, Jane, and Rose Mary are half-sisters, having the same mother.

Much of the proof at trial was directed to the execution of the 2003 will and not the deeds at issue. Carolyn Utley testified that she married Damon Utley in 1995 and that the two of them executed wills in November 2000. She stated that Utley executed another will in January 2003, after learning on December 30, 2002, that his cancer was terminal. She said that Utley's 2003 will differed considerably from the November 2000 will. Carolyn testified that Scottie met her and Utley at the doctor's office shortly after learning of the diagnosis and that she heard Scottie ask Utley where his will was located and tell Utley that he should change the executor because the person nominated in the 2000 will, Rose Mary's husband Sam, was an alcoholic who had started drinking again. She said that Scottie suggested attorney Raymon Harvey to prepare the will and was in charge of communicating Utley's changes in the will to Harvey. She explained that the 2003 will was prepared in case the deeds were not executed at the time of Utley's death. Carolyn admitted that Harvey went over the will with Utley "word for word" at her request. She admitted that Utley knew the nature and extent of his personal property and that he had started to dispose of it prior to his final illness.

Carolyn also testified that, although she had discussed the matter with Utley, Scottie had the deeds prepared because Utley did not want the property to pass through probate. She stated that Utley knew how the deeds were drawn up but opined that Utley did not know what he was signing when he executed the deeds because they represented a different disposition of his property than what she had been led to expect. She said that one reason she believed that the will was not as Utley intended was because it did not treat Scottie, Jane, and Rose Mary the same and because Scottie had assured her father that she would take care of her sisters. She also admitted that the disposition of Utley's property by the deeds was the same as the disposition in the 2003 will. She admitted that Utley executed nine deeds on February 4, including five from Utley to himself and her as tenants by the entirety. She stated that Scottie served as courier between Utley and Stewart Title, that Scottie discussed the deeds with Utley, and that Scottie communicated any changes to Stewart Title.

Scottie Burchett testified that she met Utley and Carolyn at the doctor's office after Utley received his diagnosis. She stated that Utley told her that she was going to have to operate the mobile-home park. She testified that her father obtained the contents of his lockbox and that she did not know the contents of

the 2000 will until she took it to attorney Raymon Harvey. She stated that she recommended Harvey to her father after he specifically told her that he did not want to use his previous attorney to prepare the will. She stated that Utley suggested some changes to Harvey's first draft of the will and that she communicated these changes to Harvey. She stated that, during the drafting of the will, Utley and Harvey had at least one telephone conversation about it. She denied keeping copies of the drafts.

Scottie admitted that she took the deeds to Stewart Title to be prepared. She stated that she and Carolyn went over the deeds. She said that the disposition of Utley's real property was the same under the 2003 will.

Rose Mary Lattin testified that Utley showed no previous favoritism among the three girls. She denied having a "falling out" with Utley between the execution of the first will in November 2000 and the execution of the second will in January 2003. She also stated that, prior to this dispute, she and Scottie shared a close relationship. She said that she offered to help or visit Utley but that Scottie told her such help was not necessary. Rose Mary admitted that nothing led her to believe that Utley lacked capacity to execute the deeds or that Scottie and Dick used their relationship to overpower Utley's freedom to make his own decisions. She also admitted that she did not research Utley's medical records to determine his condition when he executed the deeds.

Jane Stanley testified that she did not have a "falling out" with Utley between the execution of the first will in November 2000 and the execution of the second will in January 2003. She stated that she did not know of anything to make her believe that Utley lacked capacity to execute the deeds and that she did not inquire into Utley's mental condition at the time the deeds were executed.

At the close of Jane and Rose Mary's proof, Scottie moved for a directed verdict, arguing that there was no proof that Utley lacked capacity to execute the deeds at issue. Jane and Rose Mary argued that the burden shifted to Scottie because she procured the execution of the deeds. The trial court granted the motion. Judgment was entered dismissing the petition. Scottie moved for an award of attorney's fees pursuant to Ark. Code Ann. § 16-22-309 (Repl.1999), arguing that there was a complete absence of a justiciable issue. The trial court denied the motion without explanation. This appeal and cross-appeal followed.

As their sole point on appeal, Jane and Rose Mary argue that the trial court erred in not shifting the burden to Scottie to produce evidence of Utley's competence to execute the deeds.[3] They do not make any argument concerning the validity of the January 2003 will.

The supreme court has said that a trial court's duty is to review a motion for directed verdict or dismissal at the conclusion of a plaintiff's case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001). In making that determination, the trial court does not exercise fact-finding powers that involve determining questions of credibility. *Id.*

Jane and Rose Mary, citing *Neal v. Jackson*, 2 Ark. App. 14, 616 S.W.2d 746 (1981), argue that, because Scottie procured the deeds, she bore the burden of proving that Utley had the required mental capacity and freedom of will to execute them. In *Estate of McKasson v. Hamric*, 70 Ark. App. 507, 20 S.W.3d 446 (2000), we discussed *Neal v. Jackson* and explained that, in an ordinary deed transaction, a grantee who procures a deed does not bear the burden of proving the grantor's mental capacity and freedom from undue influence:

> Appellant relies on *Neal v. Jackson*, 2 Ark. App. 14, 616 S.W.2d 746 (1981), and *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997), for the proposition that one who procures a deed has the burden of proving mental capacity and a lack of undue influence. The language in *Neal*, upon which appellant relies, was dicta. *Noland* involved an *inter vivos* trust with title to the real property to pass at the time of the settlor's death. It simply cannot be the law that in an ordinary deed transaction the grantee bears the burden of proving the grantor's mental capacity and his freedom from undue influence merely because the grantee has caused the deed to be prepared.

*Hamric*, 70 Ark. App. at 511, 20 S.W.3d at 449.

Here, we cannot view the deeds in isolation. This scenario is similar in that respect to the facts in *Noland v. Noland, supra*. These

---

[3] Jane and Rose Mary appear to lack standing to challenge the validity of the deeds. The issue was raised in the trial court, but no ruling was ever rendered on the issue. It is not argued on appeal.

deeds were part and parcel of Utley's testamentary plan, which included the January 2003 will. There was testimony that Utley wanted the deeds prepared in order to avoid the time and expense of probate. Moreover, the disposition of Utley's real property under the 2003 will was the same as that accomplished by the deeds he executed on February 4, 2003. Consequently, if Scottie procured the deeds, the presumption would arise and the burden of proof would shift.

■ "Procurement" originally meant that the beneficiary himself wrote the will. *McDaniel v. Crosby*, 19 Ark. 533 (1858); *see also Looney v. Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992); *Greenwood v. Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979); *Estate of McKasson v. Hamric, supra*. It has been extended to situations in which the beneficiary caused the will to be prepared and participated in its execution. *See, e.g., Smith v. Welch*, 268 Ark. 510, 597 S.W.2d 593 (1980). Procurement was also found where the beneficiary held the decedent's power of attorney and directed the will to be written. *Orr v. Love*, 225 Ark. 505, 283 S.W.2d 667 (1955); *In re Estate of Garrett*, 81 Ark. App. 212, 100 S.W.3d 72 (2003). There was no proof that Scottie did anything more than serve as a courier or messenger between her father and Stewart Title, where the deeds were prepared. This is not enough to prove procurement. We cannot say that the trial court's decision finding no evidence of procurement was clearly erroneous.

On cross-appeal, Scottie argues that the trial court erred in not awarding her attorney's fees under Ark. Code Ann. § 16-22-309 (Repl. 1999), asserting that there was a complete absence of a justiciable issue of either law or fact raised by Jane and Rose Mary. If the case lacks a justiciable issue, an award of fees is mandatory. Ark. Code Ann. § 16-22-309(a)(1) (Repl. 1999). On appeal, the question as to whether there was a complete absence of a justiciable issue shall be determined de novo on the record of the trial court alone. Ark. Code Ann. § 16-22-309(d) (Repl. 1999); *Stilley v. Hubbs*, 344 Ark. 1, 40 S.W.3d 209 (2001); *Elliott v. Hurst*, 307 Ark. 134, 817 S.W.2d 877 (1991). We do not reverse the trial court's finding, however, unless it is clearly erroneous. *Cureton v. Frierson*, 41 Ark. App. 196, 850 S.W.2d 38 (1993).

■ We cannot say that the trial court clearly erred in denying Scottie's motion for attorney's fees pursuant to Ark. Code Ann. § 16-22-309. Subsection (a)(1) provides for an award of fees in "any civil action in which the court having jurisdiction finds

that there was a complete absence of a justiciable issue of either law or fact[.]'' Subsection (b) provides in pertinent part that in order to find a lack of justiciable issue, "the court must find that the action, claim, setoff, counterclaim, or defense was commenced, used, or continued in bad faith solely for purposes of harassing or maliciously injuring another or delaying adjudication without just cause[.]'' Scottie contends that, because Jane and Rose Mary admitted that they did not have any evidence that Utley lacked capacity to execute the deeds, they were acting in bad faith by continuing with this suit.

The trial court expressly declined to find a complete absence of a justiciable issue. Under the plain language of section 16-22-309, such a finding is a prerequisite to an award of attorney's fees. *City of Forth Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 209 S.W.3d 344 (June 2, 2005); *Chlanda v. Killebrew*, 329 Ark. 39, 945 S.W.2d 940 (1997). In any event, we cannot say that the record before us demonstrates a complete lack of justiciable issue such that Jane and Rose Mary acted in bad faith by continuing with their suit. Jane and Rose Mary were unsuccessful in their attempt to demonstrate that Scottie procured the deeds. However, there was nothing to indicate that this suit was filed in bad faith or that it was brought solely for the purpose of harassing or of maliciously injuring Scottie. We thus affirm on cross-appeal.

Affirmed on direct appeal; affirmed on cross-appeal.

GLADWIN and BAKER, JJ., agree.