PHILLIP T. WHITEAKER, Judge
This is a will-contest case. Appellant Teresa Griffith is the daughter of decedent Dorothy Grable; appellee Rick Griffith is *214 Grable's son.[1] Teresa sought to admit Grable's purported 2009 will to probate in the Pulaski County Circuit Court. The circuit court admitted the will to probate and appointed Teresa as executrix of the estate. Shortly thereafter, Rick filed a will contest, objection, and petition to set aside the order admitting the will to probate. During a bench trial on the matter, the circuit court granted Rick's motion for directed verdict and subsequently entered an order declaring the previously admitted will invalid and ordering the estate to proceed as if no will existed. Teresa has brought this appeal. We affirm.
I. Background
Grable passed away on June 1, 2015. Less than three months after Grable's death, on August 20, 2015, Teresa filed her petition for probate of will and appointment of personal representative. Teresa attached to her petition a copy of Grable's purported will, dated September 3, 2009. She also attached to her petition proofs of will from Betty Alred, Kimberley Shanley, and Denise Choate, dated August 19 and 20, 2015. Alred had notarized Grable's will in 2009, and Shanley and Choate had signed it as witnesses at the time.
Rick promptly filed his will contest on September 4, 2015, complaining that the order probating the will and appointing Teresa executrix had been filed without notice or service to him; that no hearing had ever been had on the petition, thus depriving Rick and his siblings of the opportunity to object; and that the will purported to leave the "great majority of the estate" to Teresa and small shares to the other siblings.[2] Rick further alleged that the will was "not executed in all respects according to law" and that the facts and circumstances suggested evidence of undue influence, fraud, and other factors affecting the document's validity.
The circuit court conducted a bench trial on Rick's will contest. At the bench trial, the parties stipulated that Teresa had procured the will, thus shifting the burden to Teresa to establish beyond a reasonable doubt that the will was freely, willingly, voluntarily, intelligently, and knowingly executed by Grable without any undue influence on Teresa's part.
Teresa presented testimony from Alred, Shanley, Choate, and Alicia Remick. Each of these witnesses testified about Grable's character and her mental capacity at the time the will was signed. They also testified about witnessing Grable's signature. They all saw Grable sign a document, but none of them testified that the will that was offered for probate and received into evidence was identical to the document that Grable signed, nor did any of them testify that they had read the will themselves.
Teresa testified concerning the procurement, contents, and execution of the will. Concerning its procurement, she stated that she drafted the will at Grable's direction and that "word for word it is her words." Despite this contention that the will was "word for word what [her] mother said," she admitted that specific paragraphs, such as those containing boilerplate language, were not the words of Grable. She conceded that her mother "did not say those contents word for word." She said the information for the will had been taken from a computer program and that not all of the language in the document *215 was word-for-word what her mother had said.
With respect to the contents of the will, Teresa admitted that the document contained at least three different fonts. She explained that she had no legal training, and she said that she "really [didn't] remember" everything she did in preparing the document, stating that the will was variously drafted with a laptop, a typewriter, a pencil, and a computer printer. Teresa stated that the first two pages looked like she typed them on the computer, and the last three pages had just been printed directly from the software program. She conceded that she had written the first two pages that left almost everything to her, that the first two pages that limited her siblings' inheritances did not display Grable's initials or signatures (as did the last three pages), and that those two pages were in a font that was different from the remaining pages. Teresa asserted that the handwriting and initials on the third, fourth, and fifth pages were Grable's handwriting, but she acknowledged that the notations of "N/A," for "not applicable," next to some of the paragraphs were in her own hand. She said that after she had filled out the "N/As," she handed the document to her mother to sign.
Regarding the execution of the will, Teresa said that she, Alicia Remick, Denise Choate, and Kimberly Shanley were present when Grable signed the will, and a "notary came and witnessed the signatures." After the will had been signed, Teresa put it in a manila envelope and sent it by certified mail to Grable's attorney. Teresa was unclear, however, whether it was the original of the will or a copy that she sent to the attorney, and she said she did not know what happened to the original after that day. Randy Satterfield, Grable's attorney before her death, testified that he received a will via certified mail from Teresa on September 12, 2009. He was unable to verify that the will he received in the mail was an original. He did testify that in January 2012, he went to Grable's residence to assist in the execution of a durable power of attorney. At that time, he asked her about her will, and she replied that she already had another one, which was the September 2009 will. Satterfield acknowledged that the font on pages one and two of the proffered will was different from that used on the last three and that the page numbers on all of the pages were in a different font than either of the other fonts used in the document. He also agreed that the enumerated paragraphs on the first two pages of the purported will were not initialed anywhere by Grable-including the paragraphs that substantially disinherited the other beneficiaries-although the provisions on pages three and following bore Grable's initials.
Following Teresa's testimony, Rick moved for a "directed verdict,"[3] arguing that Teresa had proved neither that the will was not procured by undue influence nor that it was a valid instrument. As *216 to the latter point, Rick pointed out the discrepancies in the fonts in the document as well as the inconsistencies in the witnesses' testimony, noting that while one witness said she saw Teresa type the entire document on a typewriter, Teresa herself said that was not true.
The circuit court granted Rick's motion, ruling from the bench that there were two issues: one, the procurement of the will; and two, whether the will had been proved pursuant to Arkansas Code Annotated section 28-40-302 (Repl. 2012), which governs the proving of a lost will. With respect to the procurement issue, the court noted that Teresa bore the burden of proof beyond a reasonable doubt because she had procured the will. The court stated that it had "all kinds of doubt" and "tremendous doubts in the way in which this will is executed." Specifically, the court expressed great concern with the differing fonts, reiterating that there was "real doubt" about the validity of the will and finding that Teresa had not met her burden-by even a preponderance of the evidence-of showing that the will was in existence at the time of Grable's death.
With respect to Teresa's attempt to prove a lost will, the court cited the lack of testimony about the location of the original will and found that there was no proof that the will had been in existence at the time of Grable's death, saying, "It's just a fact ... that we don't know where the original will is." Citing the conflicts in the testimony as to the execution and terms of the will, as well as the fact that the proofs of will were not executed concurrently with the execution of the will, the court granted Rick's motion for dismissal. The court thus withdrew the previously admitted will and declared that the estate would be treated as though Grable had died intestate. A written order reflecting the circuit court's findings was entered shortly thereafter, and Teresa filed a timely notice of appeal.
II. Standard of Review
We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. Donley v. Donley , 2016 Ark. 243, at 6, 493 S.W.3d 762, 766 (applying de novo standard of review to an appeal following the circuit court's granting a directed-verdict motion).[4] A finding is clearly erroneous when, although there is evidence to support it, we are left on the entire evidence with the firm conviction that a mistake was made. Id. We defer to the superior position of the trial court to weigh the credibility of the witnesses. Pyle v. Sayers , 344 Ark. 354, 39 S.W.3d 774 (2001).
III. Discussion
Teresa's brief raises three separate points on appeal, all of which challenge the circuit court's ultimate decision to grant Rick's motion for dismissal. First, she argues that the circuit court erred in its evaluation of the evidence presented and its assessment of the credibility of the testimony. We find no merit to this argument. We defer to the court's evaluation of the evidence under our standard of review, and we find no merit in the assertion that the court assessed the credibility of the *217 testimony in granting Rick's motion for dismissal.[5] Second, she argues that the circuit court misapplied the burden of proof as it applies to will contests in which one party procures the will and must demonstrate that the will was not procured through undue influence. As noted above, the parties stipulated that Teresa procured the will; therefore, her burden of proof at trial was to demonstrate that the will was not the product of undue influence. The circuit court, however, made no findings with respect to whether the will was procured by undue influence; accordingly, we have nothing that we can review on that specific issue.
In her third point on appeal, Teresa argues that the circuit court erred in finding that she did not make a prima facie case of proving a lost will. Here, the evidence clearly demonstrated that no one knew the location of the original copy of Grable's will. Teresa herself could not testify with any certainty as to the whereabouts of the original, saying that she mailed the original to Grable's lawyer, that she retained the original, and that she did not know the location of the original. Attorney Satterfield testified that he received "a" will from Teresa, but he did not aver that it was the original will. Thus, the circuit court correctly determined that it had to decide whether Teresa met her burden under the statute governing the proving of a lost will.
Arkansas Code Annotated section 28-40-302, which deals with proving a lost or destroyed will, provides as follows:
No will of any testator shall be allowed to be proved as a lost or destroyed will unless:
(1) The provisions are clearly and distinctly proved by at least two (2) witnesses, a correct copy or draft being deemed equivalent to one (1) witness; and
(2) The will is:
(A) Proved to have been in existence at the time of the death of the testator, or
(B) Shown to have been fraudulently destroyed in the lifetime of the testator.
Ark. Code Ann. § 28-40-302.
Under this statute, Teresa, as the proponent of a lost will, had to prove two things: first, the will's execution and its contents by strong, cogent, and convincing evidence; and second, that the will was still in existence at the time of Grable's death (i.e., had not been revoked by her) or was fraudulently destroyed during Grable's lifetime. See Whatley v. Estate of McDougal , 2013 Ark. App. 709, at 3-4, 430 S.W.3d 875, 878 ; Abdin v. Abdin , 94 Ark. App. 12, 223 S.W.3d 60 (2006). The burden of proof to establish the execution and contents of a lost will is on the party who claims under it. Porter v. Sheffield , 212 Ark. 1015, 1017, 208 S.W.2d 999, 1001 (1948).
We note that the statute is written in the conjunctive: that is, the proponent of the will (i.e., Teresa) must prove both the execution and contents of the will and that the will was in existence at the time of the testator's death. See, e.g. , Smith v. Farm Bureau Mut. Ins. Co. of Ark. , 88 Ark. App. 22, 33, 194 S.W.3d 212, 220 (2004) (noting that when a phrase is conjunctive, it requires proof of both clauses). Here, the circuit court found Teresa's proof as to the execution and contents of the will to be lacking, and we are unable to say that this conclusion was clearly erroneous.
We find there was no strong, cogent, or convincing evidence about the circumstances *218 under which the will was produced-it may have been typewritten, handwritten, or printed from a computer. There was no strong, cogent, or convincing evidence to explain the discrepancies in the fonts used in the document. There was no strong, cogent, or convincing evidence that excluded tampering with the document and its testamentary provisions. None of the witnesses testified that they read the will themselves, and only Alicia Remick testified that she observed Grable read the will. The evidence that were introduced showed only that the witnesses saw Grable sign a document, and none of the witnesses testified that the document that was introduced at trial was identical to the document they saw Grable sign. Thus, in the absence of proof of one of the necessary elements to prove a lost will, we cannot say that the circuit court erred in finding that Teresa failed to prove both the execution and contents of the will.
Affirmed.
Gladwin and Brown, JJ., agree.

Grable also had two other sons and two stepsons.

The will devised the bulk of Grable's estate to Teresa, with two parcels of property left to one of her sons and small amounts of cash to the other sons and stepsons.

Rick's motion was properly a motion to dismiss, not a motion for directed verdict. Arkansas Rule of Civil Procedure 50(a) provides that "[i]n nonjury cases a party may challenge the sufficiency of the evidence at the conclusion of the opponent's evidence by moving either orally or in writing to dismiss the opposing party's claim for relief." Nonetheless, the circuit court must use the same legal standard in evaluating a motion to dismiss as it would in evaluating a motion for a directed verdict. The court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." Woodall v. Chuck Dory Auto Sales, Inc. , 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). If the non-moving party has made a prima facie case on its claim or counter-claim, then the issue must be resolved by the finder of fact. Swink v. Giffin , 333 Ark. 400, 402, 970 S.W.2d 207, 208 (1998).

We note that other cases apply a different standard of review in probate cases in which the circuit court granted a motion to dismiss or a motion for directed verdict. See Higginbotham v. Graham , 2013 Ark. App. 397, 2013 WL 3088995 (standard of review for a Rule 50 dismissal was whether, if the matter had been a jury trial, the evidence would have been sufficient to go to a jury); Stanley v. Burchett , 93 Ark. App. 54, 216 S.W.3d 615 (2005) (same). Under either standard of review, however, our decision would be the same.

Specifically, the court stated in its oral ruling from the bench that it was not "getting into" the issue of the credibility of the testimony in its decision.