IN the MATTER of the ESTATE of
Joe Thomas GARRETT, Deceased;
Joni Garrett Hart *v.*
Carolynne J. GARRETT and Richard Larry Garrett

CA 02-170                                            100 S.W.3d 72

Court of Appeals of Arkansas
Division II
Opinion delivered March 12, 2003

*Raymond C. Smith*, for appellant.

*Everett Law Firm*, by: *John C. Everett* and *Elizabeth Storey*, for appellees.

WENDELL L. GRIFFEN, Judge. Joni Hart appeals from an order of the Circuit Court of Washington County denying her petition contesting her father's will and finding that her father executed the will absent undue influence and with the requisite testamentary capacity. We hold that the trial court's decision upholding the will was not clearly erroneous and affirm.

Appellant's father, Joe Thomas Garrett, the decedent, was diagnosed with lung cancer and underwent surgery in Little Rock, Arkansas, on January 13, 2000. He suffered complications after surgery that prevented him from leaving the hospital and returning to his home in Springdale, Arkansas. On February 8, 2000, at the decedent's request, his wife, Carolynne Garrett, contacted the decedent's brother, Richard Larry Garrett (Larry), and

asked him to come to Little Rock to help the decedent arrange his affairs. Larry was a certified public accountant living in Nashville, Tennessee, who served as the decedent's CPA and financial advisor for many years. Larry met with the decedent on February 10, 2000, to discuss the decedent's wishes concerning disposition of his property. At that time, Larry had the decedent sign a power of attorney he drafted before leaving Tennessee and coming to Little Rock.

On February 11, 2000, at the direction of the decedent, Larry traveled to Springdale, Arkansas, to meet with John Neihouse, an attorney specializing in tax and estate planning, to discuss preparing a will and a trust for the decedent. The decedent and his wife consulted Neihouse in December 1999 about creating two trusts for Carolynne's grandchildren, which Neihouse prepared, and on at least two other occasions between December 1999 and January 2000 (to sign the trusts and make a second funding to the trusts). During those meetings, the decedent discussed having Neihouse draft a will for him.

Based on the information that Larry had provided, Neihouse prepared a revocable trust, a will, and a second power of attorney. On February 12, 2000, Neihouse faxed a copy of the will, the signature page of the trust, and the power of attorney to the hospital. Neihouse faxed those documents to the decedent because Carolynne or Larry informed him that the decedent might be placed on a respirator and sedated later that day. Upon receiving the documents, Larry asked Dr. Manyusha Kota, one of the decedent's treating physicians, to perform a competency evaluation on the decedent to determine if he was capable of executing the documents. He then recruited a nurse, Gwen Hart, and a social worker, Anne Stroud, from the hospital to witness execution of the will. After the will was read to him by Larry, the decedent executed the will, the signature page of trust, and the second power of attorney in the presence of Dr. Kota, the nurse, the social worker, Carolynne, and other relatives. Because it was Saturday, Larry was unable to locate a notary to notarize the witnesses' signatures on the proof of will; however, a hospital notary notarized the witnesses' signatures two days after the decedent executed the will.

The decedent died on February 18, 2000, at the age of sixty-four. His will was admitted to probate on May 24, 2000. The will provided that all property owned by the decedent at death was to go to the acting trustee of the Joe Thomas Garrett Revocable Trust. Carolynne Garrett and Richard Larry Garrett were named co-trustees under the Trust. In the will, the decedent acknowledged appellant, Toni Ritchie, and Sheila Garrett as his children from prior marriages; specifically excluded Toni and Sheila from inheriting anything under the will; and provided that any distribution of property to appellant or her descendants was set forth in the Trust. Under the Trust, at the death of Carolynne, the Trust assets were to be distributed in the following percentages: fifty percent to Carolynne's children; twenty percent to Richard Garrett; fourteen percent to Mary Katherine Garrett; fourteen percent to Marti Lewis; and two percent to Joni Hart. Since 1969, appellant had seen the decedent only three or four times.

On September 18, 2000, appellant filed an amended petition to contest the will and trust alleging that the will was the product of undue influence by both Carolynne and Larry and that the decedent lacked the necessary mental capacity to execute the will. At a hearing on the matter, Larry, Carolynne, Dr. Kota, Anne Stroud, Gwen Hart, and Dr. Laura Hutchins all testified that the decedent was fully competent and was not subject to any undue influence at the time he signed the will. Specifically, Dr. Kota testified that she performed the standardized "mini-mental examination" of the decedent on February 12, 2000, prior to him executing the will and that he received the maximum score. From this test, Dr. Kota determined that the decedent was alert and oriented as to time, place, and person.

During the hearing, appellees moved for a directed verdict on the grounds that there was insufficient evidence to support appellant's allegations of undue influence and diminished mental capacity. The trial court granted the motion, finding no evidence that Carolynne or Larry procured the will or exercised undue influence over the decedent in securing the will, nor any proof that the decedent lacked sufficient testamentary capacity to execute the will. Accordingly, the trial court dismissed appellant's

petition with prejudice. It is from this judgment that appellant has appealed.

On appeal, probate cases are reviewed *de novo*; however, an appellate court will not reverse the trial court's findings unless they are clearly erroneous. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996). Due deference is given to the superior position of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

In a typical will contest, the party contesting validity of the will has the burden of proving by a preponderance of the evidence that the testator lacked mental capacity at the time the will was executed or that the testator acted under undue influence. *Looney v. Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992). Where, however, a beneficiary procures the making of a will, a rebuttable presumption of undue influence arises and the beneficiary must prove beyond a reasonable doubt that the testator enjoyed both the required mental capacity and freedom of will. *Pyle v. Sayers*, 344 Ark. 354, 39 S.W.3d 774 (2001).

In the instant case, the trial court found that Carolynne and Larry did not procure the decedent's will notwithstanding undisputed proof that Carolynne contacted Larry to come to Arkansas, that Larry directed Neihouse to prepare the will, and that both were beneficiaries. Therefore, pursuant to longstanding precedent in Arkansas, we hold that the trial court erred in finding that Carolynne and Larry did not procure the will. As such, appellees were obligated to rebut the presumption of undue influence by proving beyond a reasonable doubt that the decedent executed the will while possessed with testamentary capacity and freedom of will. *See Pyle v. Sayers, supra.*

The trial court further found that there was no evidence that Carolynne, as the decedent's wife, and Larry, as decedent's brother and financial advisor, exercised undue influence over the decedent or that the decedent was incompetent when he executed the will. The record reveals that Larry acted only as requested and instructed by the decedent in securing the will. Although Carolynne and Larry assisted the decedent in getting his affairs in order, nothing in the record suggests that their influence

with the decedent operated to override his discretion and destroy his free will. Further, appellant's medical doctor and other disinterested witnesses testified that the decedent was of sound mind when he executed his will; that they did not believe he was being unduly influenced to execute this will; and that the decedent was doing what he wanted to do. Thus, based on our review of the record, we cannot hold that the trial court erred in finding that the decedent's will was valid, being executed absent undue influence and with the requisite testamentary capacity. Although the trial court erred by finding that no procurement occurred, its error was rendered harmless by proof regarding the decedent's testamentary capacity and freedom from undue influence.

However, on appeal, appellant has abandoned her challenge to the will on the basis of undue influence and lack of mental capacity. Instead, appellant now challenges whether a durable power of attorney can empower or authorize an agent or attorney-in-fact to make a will on behalf of the principal or testator. Appellant argues that her father's will is invalid because the power to make a will is personal and nondelegable; thus, the power of attorney executed by the decedent could not have empowered Larry to make a will for the decedent, even though the decedent instructed Larry how he wanted his property distributed.

This argument was not raised below, and thus is not preserved for appellate review. *Reid v. Frazee*, 72 Ark. App. 474, 41 S.W.3d 397 (2001). We note, however, that a power of attorney, durable or otherwise, cannot bestow upon the attorney-in-fact the power to create a will on behalf of a principal. A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon that agent the authority to perform certain specified acts or kinds of acts on behalf of the principal. *Black's Law Dictionary* 1171 (6th ed. 1990). Under a power of attorney, an agent is "authorized to act with respect to any and all matters on behalf of the principal with the exception of those which, by their nature, by public policy, or by contract require personal performance." 3 AM. JUR. 2d *Agency* § 21 (2002). The decision of who, what, when, and how one's property is to be distributed upon death is clearly personal and that of the principal alone, and thus falls within the exception.

■ However, the facts of this case do not indicate that Larry, as the attorney-in-fact, was the maker of decedent's will. Instead, the record reveals that the decedent engaged Neihouse to draft the will, trust, and a power of attorney. The decedent instructed Larry to tell Neihouse how he wanted his property distributed. The decedent reviewed and signed the will. Larry merely acted as a conduit or messenger between the decedent and Neihouse concerning the decedent's wishes because the decedent was ill and unable to leave the hospital. Under these facts, it was the decedent, and not Larry, who was the maker of the will.

Affirmed.

ROBBINS and BIRD, JJ., agree.