William WESLEY, Mary Wesley, and Tommy Jones *v.*
ESTATE OF Joseph "Joe" BOSLEY, *Deceased, et al.*

CA 02-901 105 S.W.3d 389

Court of Appeals of Arkansas
Division III
Opinion delivered April 23, 2003

[Petition for rehearing denied May 28, 2003.]

*Howell, Trice, Hope & Files, P.A.*, by: *Kevin O'Dwyer*, for appellants.

*Simmons S. Smith*, for appellees.

Terry Crabtree, Judge. This appeal involves a family dispute over the funds in two savings accounts owned by Joseph Bosley, who died on February 3, 2001, at the age of ninety-two. Mr. Bosley, who was widowed, lived alone in his house in Little Rock and was relatively independent, although he relied on others to help him run errands. He drew social security benefits, and had savings accounts with Regions Bank and Bank of America. Mr. Bosley had several siblings, including appellants Mary Bosley and Willien Wesley, who lived in California. Mr.

Bosley's nephew, appellant Tommy Jones, who also lived in California, had Mary Bosley's power of attorney. Appellee James Williams is the nephew of Mr. Bosley's deceased wife and lives in Little Rock. Mr. Williams provided substantial assistance to Mr. and Mrs. Bosley before Mrs. Bosley died and a lesser amount of help to Mr. Bosley thereafter. Appellee Mary Modica is Mr. Bosley's granddaughter, who lives in Texas. Mr. Williams and Ms. Modica are the beneficiaries of Mr. Bosley's will, and Mr. Williams is executor of the estate.

In May 2000, Mr. Jones came to Arkansas and accompanied Mr. Bosley to Regions Bank and Bank of America, where Mr. Bosley placed Mary Bosley's name as a joint tenant with right of survivorship on his savings accounts. Mrs. Wesley came to Arkansas in June 2000, and Mr. Bosley added her name as a joint tenant to those accounts while she was here. In November 2000, Mr. Bosley broke his arm and was hospitalized. He also had cancer and became too ill to live alone. While Mr. Bosley was in the hospital, Mrs. Wesley and Mr. Jones came back to Arkansas and removed some of the furniture from his house, changed the house's locks, had Mr. Bosley's mail forwarded to Mr. Jones's residence in California, and terminated the utilities to Mr. Bosley's house. They also had Mr. Bosley admitted to the Quapaw Quarter Nursing Home and Rehabilitation Center, where Mr. Bosley died the next February. Although the nursing home received some payments on his account, apparently from his social security benefits, a substantial sum remained unpaid. The nursing home was unaware that Mr. Bosley had approximately $100,000 in savings. Immediately after Mr. Bosley's death, appellants transferred the funds in the Bank of America account ($42,000) in equal amounts to Mary Bosley's and Mrs. Wesley's bank accounts in California.

Immediately after the funeral, appellees filed suit in the Pulaski County Circuit Court against appellants for injunctive relief prohibiting any further transfer of the funds and ordering the Bank of America funds to be returned. Mr. Williams also initiated the probate of Mr. Bosley's estate, and Mr. Jones filed a claim for the money he had spent on Mr. Bosley's funeral services. The cases were consolidated.

In his decision, the judge found that Mrs. Wesley and Mr. Jones were untruthful, "less than credible," and deceptive. He found the testimony of Mr. Williams, Will Bosley (Mr. Bosley's brother), Catherine Harper (Mr. Bosley's niece), and Shirley Lewis (his neighbor for thirty years) to be credible. The judge found that appellants had exercised unauthorized and wrongful control of Mr. Bosley's home and its contents. He also found that, when appellants communicated with the nursing home regarding Mr. Bosley's assets in order to obtain Medicaid benefits, they deceived the nursing home by failing to disclose that Mr. Bosley had approximately $100,000 in savings. He further found that Mrs. Wesley and Mr. Jones had failed to pay the nursing home for Mr. Bosley's care.

The judge also made the following findings, which are at the heart of the issues on appeal:

11. That Joseph "Joe" Bosley's acts of adding Willien Wesley and Mary Bosley's names to his savings accounts were gifts.

12. That Willien Wesley, Mary Bosley and Tommy Jones induced Joseph "Joe" Bosley to add the names of Willien Wesley and Mary Bosley to his savings accounts by promising Joseph "Joe" Bosley they would care for Joseph "Joe" Bosley at his home versus being placed in a nursing home.

13. That the relationship between Willien Wesley, Mary Bosley, Tommy Jones, and Joseph "Joe" Bosley was the sort of relationship that raises a legal or evidentiary presumption of invalidity of gifts.

14. That there is substantial evidence Willien Wesley, Mary Bosley, and Tommy Jones defrauded, coerced and/or took undue advantage of Joseph "Joe" Bosley to secure the gifts regarding the Regions Bank and Bank of America savings account funds.

. . . .

19. That the Court finds that Joseph "Joe" Bosley, shortly before his death, realized he had been deceived into transferring his Savings Account to a joint account with a right of survivorship to Willien Wesley and Mary Bosley with the promise of maintaining Joseph "Joe" Bosley in home during his old age and/or ill health, but Joseph "Joe" Bosley was too ill or frail to take the necessary actions to rectify the situation with his Savings Accounts by removing Willien Wesley and Mary Bosley's names from the Regions Bank and Bank of America savings accounts.

The judge found that appellees had sustained their burden of proof by clear and convincing evidence that the gift or transfer of the funds was obtained by the defendants as a result of undue influence, fraud, or overreaching or by a means condemned by law. He also found that appellees had sustained their burden of proving that the relationship between Mr. Bosley and appellants was

> of such a nature as to raise a presumption that the gift in favor of [appellants] was obtained by an abuse of that relationship; that the [appellees'] proof shifted the burden of proof to the [appellants] to prove the legitimacy of the gift; and, the [appellants] failed to meet their burden of establishing the legitimacy of the gift.

The judge entered judgment in the amount of $42,000 against appellants, ordered them to transfer all sums held in Regions Bank to Mr. Bosley's personal representative, and enjoined them from removing the funds held in Regions Bank. The judge stated that Mr. Jones's claim against the estate for the funeral expenses would be offset and satisfied by the furniture and property appellants had removed from Mr. Bosley's home without authority.

## Arguments

Appellants make the following arguments on appeal: (1) the judge erred in denying their claim to the funds on the ground that they failed to establish a gift; (2) the judge erred in finding that a confidential relationship existed between Mr. Bosley and appellants; (3) the judge erred in shifting the burden of proving the validity of the gift to appellants; (4) there was insufficient evidence to prove undue influence, fraud, or overreaching on the part of appellants; (5) the judge erred in entering a judgment for the nursing home bill against Mrs. Wesley and Mr. Jones; (6) the judge erred in offsetting Mr. Jones's claim against the estate for the funeral services with the furniture and property appellants had taken from Mr. Bosley's house. Although we agree that the judge erred in applying the law of gifts, finding that Mr. Bosley had a confidential relationship with appellants, and shifting the burden of proof to appellants, reversal is not warranted for the reasons expressed below.

## Whether a Gift Was Made

Appellants contend that, because their claim to the bank accounts is based on their rights as surviving joint tenants, the judge erred in applying the rules of law relating to gifts. We agree. The law governing the validity of gifts *inter vivos* is well settled. The donor must be of sound mind, must actually deliver the gift with intention to vest immediate title, and the gift must be accepted by the donee. *Burns v. Lucich*, 6 Ark. App. 37, 638 S.W.2d 263 (1982). Ordinarily, in cases involving claims of undue influence or lack of capacity to make a gift, the burden of proof is upon one who attacks such a gift to prove that the donor lacked the capacity to give the gift or was unduly influenced. *Id.* However, a different burden of proof arises when it is shown that a confidential relationship existed between the donee and the donor. *Id.* Where special trust or confidence has been shown, a gift to the dominant party is presumed to be void, and the burden then rests upon the dominant recipient to show that he has not overreached the giver. *Id.*

We believe that, because Mr. Bosley did not release all future dominion and control over the bank accounts in question, an *inter vivos* gift was not proven, *see Wright v. Union National Bank of Arkansas*, 307 Ark. 301, 819 S.W.2d 698 (1991), and the judge erred in applying the law of gifts. We also note that appellants' claim to the funds in these accounts is based on their rights as surviving joint tenants, not on their rights as recipients of a gift. It is settled law that claims based on survivorship rights are distinguishable from gifts. *Coleman v. Coleman*, 59 Ark. App. 196, 955 S.W.2d 713 (1997).

## Whether There Was a Confidential Relationship

Appellants contend that the judge erred in finding that a confidential relationship existed because appellees failed to plead it. If evidence showing such a relationship had been introduced, it would be proper to consider the pleadings as amended to conform to the proof.[1] However, such evidence is absent.

---

[1] Although pleadings are required so that each party will know the issues to be tried and be prepared to offer his proof, Rule 15(b) of the Arkansas Rules of Civil Procedure

■ ■ The evidence does not support the judge's finding that appellants had a confidential relationship with Mr. Bosley. Relationships deemed to be confidential arise whenever there is a relation of dependence or confidence, especially confidence which springs from affection on one side and a trust in reciprocal affection on the other. *Jones v. Balentine*, 44 Ark. App. 62, 866 S.W.2d 829 (1993). A confidential relationship, however, is not established simply because parties are related. *Wright v. Union Nat'l Bank of Ark., supra.* It is apparent that Mr. Bosley's relationship with appellants was no closer than it was with his other relatives. In fact, the overwhelming evidence showed that Mr. Bosley had little contact with appellants. There is no evidence showing any special trust or dependence on Mr. Bosley's part or any position of dominance on the part of appellants. Accordingly, we hold that the judge's finding that a confidential relationship existed is clearly erroneous and, therefore, the judge erred in shifting the burden of proof to appellants. As explained below, however, these errors do not require reversal.

### Fraudulent Inducement

■ Appellants assert that the judge's finding of undue influence, fraud, and coercion on the part of appellants is clearly erroneous. Although we agree that no coercion or undue influence was shown, the judge's decision can be affirmed on the basis of fraudulent inducement. If the trial judge reached the right result in a traditional equity case, we will affirm even if we disagree with the judge's reasoning. *Wedin v. Wedin*, 57 Ark. App. 203, 944 S.W.2d 847 (1997). As discussed above, only part of the judge's decision is clearly erroneous.

■ In order to establish fraud, the party asserting it must prove by a preponderance of the evidence: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the

---

permits the amendment of the pleadings to conform to the evidence introduced at trial. *Hope v. Hope*, 333 Ark. 324, 969 S.W.2d 633 (1998). Issues not raised in the pleadings but tried with the express or implied consent of the parties are treated as though they had been pled. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 701 (1997). The failure of a party to move to have the pleadings conform to the proof does not affect the trial on the issue in question. *Id.*

representation; (3) justifiable reliance on the representation; and (4) damage suffered as a result of the reliance. *Golden Tee, Inc. v. Venture Golf Schools, Inc.*, 333 Ark. 253, 969 S.W.2d 625 (1998). The question of fraud is ordinarily one of fact. *Godwin v. Hampton*, 11 Ark. App. 205, 669 S.W.2d 12 (1984).

 Appellants denied having promised to care for Mr. Bosley in his home in consideration for the addition of Mrs. Wesley's and Mary Bosley's names on the accounts. As mentioned above, however, the judge had no faith in Mrs. Wesley's and Mr. Jones's veracity. As the fact-finder, it was within the trial judge's province to believe or disbelieve the testimony of any witness. *See Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). Deference is generally accorded to the superior position of the judge to assess the credibility of the witnesses and the weight to be given their testimony. *Hunt v. Hunt*, 341 Ark. 173, 15 S.W.3d 334 (2000).

By all accounts, Mr. Bosley was very "tight" with his money. It is reasonable to conclude that he would not have added his sisters' names to his savings accounts if they had not promised to take care of him in return. There is ample evidence to support the judge's finding that appellants did make this promise. Will Bosley testified that when Mr. Bosley was in the nursing home, he told him that his sister had promised to stay in his house and take care of him if he signed over the money. Catherine Harper stated that, near the end of her uncle's life, she visited him in the hospital and he told her that Mrs. Wesley was coming to Little Rock to take care of him. Mary Modica also testified that Mr. Bosley had told her that his sister was going to take care of him. Mrs. Wesley admitted that the nursing home's log book indicated that Mr. Bosley had told the administrator that Mrs. Wesley was staying at his house in Little Rock. Mr. Williams testified that, when he saw Mr. Bosley in the hospital, he said that he was going home to live with his sisters when he was discharged. He testified that after Mr. Bosley was in the nursing home, he asked Mr. Williams not to "throw him away" like his family had and that, although they were supposed to be in his house, they had gone back to California, and he "had been a fool."

Additionally, evidence demonstrating that appellants never intended to follow through with their promise to care for Mr.

Bosley in his home was presented. After Mr. Bosley's sisters secured their names on his accounts in May and June 2000, they returned to California. Mrs. Wesley and Mr. Jones did not return to Little Rock until Mr. Bosley was in the hospital in the fall of 2000. Also, Mrs. Wesley and Mr. Jones changed the locks on Mr. Bosley's house and disposed of a substantial amount of Mr. Bosley's furniture when he was in the hospital. Obviously, they did not intend to take care of him in his home after that time. Indeed, appellants made no attempt to follow through on their promise to care for Mr. Bosley in his home.

As for justifiable reliance, there is no question that Mr. Bosley added his sisters' names to his savings account. Further, there is no dispute that, as a result of Mr. Bosley's reliance on his sisters' promise, his estate had to file suit to recover his money. Also, Mr. Bosley did not receive the promised in-home care, and incurred substantial nursing home costs as a result.

Based on this evidence, the judge's finding that appellants fraudulently induced Mr. Bosley to add his sisters' names to the accounts is not clearly erroneous.

### The Nursing Home Bill

Appellants' fifth point on appeal is stated as follows: "The trial court abused its discretion by entering a judgment assigning the outstanding nursing home bill for Quapaw Quarter Nursing Home and Rehabilitation Center to Willien Wesley and Tommy Jones." However, no such judgment is in the record on appeal. In his order, the trial judge simply noted that Mrs. Wesley and Mr. Jones had failed to pay the nursing home for Mr. Bosley's care; he did not enter a judgment against them for this bill. At the trial, the judge stated that, regardless of whether the estate recovered the money, it would be responsible for the nursing home bill. This argument is, therefore, without merit.

### Mr. Jones's Claim Against the Estate

Appellants also contend that the judge erred in offsetting Mr. Jones's claim for the funeral services, for which he paid, against the property that appellants had wrongfully removed

from Mr. Bosley's home. According to appellants, this is so because no evidence was taken as to the value of that property. Although we agree that no valuation evidence was admitted, the judge's decision on this issue can be affirmed. The clean-hands maxim, which was obviously applied by the judge, bars relief to those guilty of improper conduct in the matter as to which they seek relief. *Lucas v. Grant*, 61 Ark. App. 29, 962 S.W.2d 388 (1998). Equity will not intervene on behalf of a party whose conduct in connection with the same matter has been unconscientious or unjust. *Cardinal Freight Carriers, Inc. v. J.B. Hunt Transp. Servs., Inc.*, 336 Ark. 143, 987 S.W.2d 642 (1999). In determining whether the clean-hands doctrine should be applied, the equities must be weighed. *Estate of Houston v. Houston*, 31 Ark. App. 218, 792 S.W.2d 342 (1990). It is within the judge's discretion as to whether the interests of equity and justice require application of the doctrine. *Grable v. Grable,* 307 Ark. 410, 821 S.W.2d 16 (1991); *Lucas v. Grant, supra.* Further, a court of equity may fashion any reasonable remedy justified by the proof. *Jones v. Ray*, 54 Ark. App. 336, 925 S.W.2d 805 (1996).

█ Although Mrs. Wesley testified that the property she and Mr. Jones removed from the house was run down and broken, Mr. Williams stated that Mr. Bosley's furniture was nice and that the missing items included two lawn chairs, a freezer, all of the furniture in the guest room (a bed, a dresser, a mirror, a chest of drawers, a mattress set, and the lamps), the living room couch, lamps, and rugs, the kitchen table and chairs, and the hall cabinet. Given appellants' fraudulent inducement of Mr. Bosley's placement of his sisters' names on his savings accounts and their wrongful control and disposition of Mr. Bosley's personal property during his last illness, we hold that the judge did not abuse his discretion in treating Mr. Jones's claim as he did.

Affirmed.

Stroud, C.J., and Robbins, J., agree.