FIRST NATIONAL BANK of Izard County *v.*
Boyd Wayne GARNER, Phillip Garner,
and Janet Garner

CA 03-1156                                    167 S.W.3d 664

Court of Appeals of Arkansas
Division III
Opinion delivered May 12, 2004

*Blair & Stroud*, by: *Robert D. Stroud*, for appellant.

*Hance Law Firm*, by: *C. Eric Hance*, for appellee.

ANDREE LAYTON ROAF, Judge. This appeal concerns the interpretation and construction of a promissory note and

security agreement signed by three debtors, the appellees, and containing a future-advances clause. The trial court held that the future-advances clause did not extend to cover a later, separate note signed by only one of the original debtors, and the appellant, First National Bank of Izard County (FNBIC) appeals. We affirm.

The parties submitted this case to the trial court on stipulated facts. On May 6, 1993, appellees Boyd Garner, Janet Garner, and Phillip Garner executed a promissory note in favor of FNBIC in the principal amount of $51,890.12, for the stated purpose of purchasing real estate. As security for the note, appellees executed a mortgage on certain real property in Izard County. In addition, appellees executed a financing statement and security agreement granting FNBIC a security interest in a Ford tractor. At the time the note, mortgage, and financing statement and security agreement were executed, Boyd Garner and Janet Garner were husband and wife. Phillip Garner is the son of Boyd Garner but not the son of Janet Garner. The Ford tractor referenced in the security agreement was owned by Boyd Garner prior to his marriage to Janet Garner.

The promissory note contained the following provisions:

> Definitions — "I" means each borrower who signs this note and each other person or legal entity (including grantors, endorsers, and sureties) who agrees to pay the note. The term 'note total' means the total amount I am obligated to pay on the note.
>
> ....
>
> Secured Obligations — This agreement secures the payment of the note and any additional amount I am or will become obligated to pay to you under the terms of the note (including all extensions, renewals, refinancing and modifications of the note) and the security agreement. This agreement also secures all other debts I may now or later owe you (including notes, insurance premiums, overdrafts, letters of credit, guarantees, and all extensions, renewals, and modifications of such debts)....

In June 2001, Janet Garner executed a promissory note to FNBIC in the original principal amount of $17,021.54. As security, Janet Garner granted FNBIC a security interest in a new Chevrolet Cavalier automobile and in the Ford tractor listed in the original May 1993 note. In January 2002, the Chevrolet automo-

bile was damaged, and insurance on the automobile paid $9,000 toward the satisfaction of the promissory note. As of May 10, 2002, there was a balance owed on the note of $7,232.14, plus late charges of $178.65. FNBIC attempted to take possession of the Ford tractor under the security agreement granted in connection with the May 1993 note, but the Garners refused to allow FNBIC to do so.

At the time the May 1993 note was executed, Boyd Garner and Janet Garner were living together as husband and wife. They separated in 2000, reconciled, and separated again in February 2001. They were divorced later that year, and Boyd Garner received the Ford tractor in the divorce decree. Neither Phillip Garner nor Boyd Gardner signed any of the loan documentation in connection with the June 2001 note executed by Janet Garner.

FNBIC filed suit seeking a judgment against Janet Garner for the unpaid balance of the note, interest, and attorney's fees. FNBIC sought an order requiring Boyd Garner and Phillip Garner to make the Ford tractor available so FNBIC could take possession and sell the tractor and apply the proceeds to the 2001 Janet Garner note. Boyd Garner and Phillip Garner[1] answered, denying the allegations of the complaint.

The trial court found that FNBIC's claim hinges on the meaning of "I" as defined in the stipulated facts. The court referred to the definition of "each" provided by the dictionary as meaning "each one; every individual one." The trial court reasoned that, in order for FNBIC to have an interest in the tractor, it would have been necessary for "every defendant" to have signed the Janet Garner note dated June 2001. The court ruled that, because that did not happen, FNBIC had no security interest in the tractor and was not entitled to take possession of this tractor and dispose of and apply the proceeds to the June 2001 note. This appeal followed.

FNBIC raises one issue on appeal: that the trial court erred when it held that the security agreement executed in 1993 by Boyd Garner, Janet Garner, and Phillip Garner did not also secure the later, separate note executed by Janet Garner in 2001.

The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. Ark. R. Civ. P. 52; *Burke v. Elmore,* 341 Ark. 129, 14

---

[1] The answer was submitted on behalf of Boyd Garner and Phillip Garner. Likewise, the brief to this court is submitted only on behalf of Boyd and Phillip Garner.

S.W.3d 872 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998).

■ The Uniform Commercial Code, in Ark. Code Ann. § 4-9-204(c) (Repl. 2001), provides, in part, that "[a] security agreement may provide that collateral secures ... future advances or other value, whether or not the advances or value are given pursuant to commitment." In construing future-advances clauses, the intention of the parties governs and is to be determined by considering all the circumstances surrounding the execution of the mortgage. *Union Nat'l Bank v. First State Bank & Trust Co.*, 16 Ark. App. 116, 697 S.W.2d 940 (1985).

■■ Courts have stated that future-advances clauses cover only advances shown to have been within the contemplation of the parties at the time the security agreement was executed. *In re Swanson*, 104 B.R. 1 (Bankr. C.D. Ill. 1989). In determining intent, we look to whether the later loan is related to or within the same class as the original debt, which allows us to infer that it was covered by the earlier agreement. *See Security Bank v. First Nat'l Bank*, 263 Ark. 525, 565 S.W.2d 623 (1978) (involving a real-estate mortgage); *Union Nat'l Bank v. First State Bank & Trust Co.*, *supra* (same). This "relatedness" rule does not defeat future-advances clauses; rather, it helps determine the parties' intent by looking at the relationship between the original security agreement and the later debt. *See In re Estate of Simpson*, 403 N.W.2d 791 (Iowa 1987).

In *Security Bank*, *supra*, Gene and Shirley Prater executed a deed of trust on their home to secure a promissory note. The trust deed contained a future-advances clause that stated that the trust deed secured not only "the indebtedness hereinafter described but any other indebtedness now or hereafter owing by parties of the first part ... and any time prior to the release or foreclosure of this instrument." Subsequently, Gene Prater, individually and doing business as Prater's Electric & Wiring Co., executed a series of notes for business purposes. The trial court held that these subsequent notes were covered by the future-advances clause of the original deed of trust. However, the Arkansas Supreme Court reversed, holding that the subsequent notes were all for business

obligations and were not of the same class as the obligation created by the Praters in connection with the purchase of their home.

In a somewhat factually similar case, *In re Swanson, supra,* the court held that the parties did not intend that the security interest secure the debts of the debtors' son, even though the debtors had guaranteed their son's debts and the note contained a future-advances clause covering the note and all other existing and future indebtedness and obligations of the debtors. The debtors and their son carried on separate farming operations utilizing land owned solely by the parents. On September 15, 1983, the parents executed a guaranty of their son's debts. On September 16, 1983, the father executed the note in question and the son borrowed money from the bank. In December 1986, the son signed another note for the balance then due. In the parents' bankruptcy case that followed, the bank and husband contended that they intended the security agreement to cover the son's 1986 note, while a secured creditor contended that the original 1983 note did not clearly and unambiguously grant a security interest in the collateral to cover the son's later debt. As noted, the trial court ruled that the parties did not intend that the security agreement would extend to the later debt, based, in part, on husband's demeanor while testifying.

In the present case, the parties considered the promissory note and security agreement as an issue dependent merely upon the construction to be given the language contained in those documents. The May 1993 security agreement provides that "[t]his agreement secures the payment of the note and any additional amounts I am or will become obligated to pay you...." The trial court found that FNBIC's claim hinges on the meaning of "I" as defined in the stipulated facts. We agree. If the construction urged by FNBIC is correct, Boyd Garner or Phillip Garner would have intended to grant a security interest for an obligation they do not owe and for which they are not responsible. Such a construction goes against the plain language of the note and security agreement. Further, the tractor belonged to Boyd Garner prior to his marriage to Janet Garner, and she may not have had any right to pledge the tractor to secure her sole debt. FNBIC also did not offer any proof that Boyd Garner had any knowledge that Janet Garner was pledging the tractor or that he agreed to her doing so. The transaction also took place after the final separation of Janet and Boyd Garner.

Moreover, one of the rules of contract construction or interpretation is that any ambiguities will be construed strictly

against the drafter of the contract. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). An ambiguity will be found when a provision is susceptible to more than one reasonable interpretation. *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998); *State Farm Fire & Casualty Co. v. Midgett*, 319 Ark. 435, 438, 892 S.W.2d 469, 471 (1995). In this instance, FNBIC was the drafter of the instrument, and we cannot say that the trial court's interpretation of the provisions at issue is not reasonable.

■ In addition to arguing the definition of "I" found in the note, FNBIC also argues that the note, in the section listing the borrower's name, states that " 'I' includes each borrower above, jointly and severally." However, FNBIC did not make this argument to the trial court. This court will not address arguments raised for the first time on appeal. *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997).

■ FNBIC relies solely on the language of the security agreements. In the absence of evidence to the contrary, the trial court was correct in concluding that Janet Garner's June 2001 note was not secured by the Ford tractor.

Affirmed.

GLADWIN and BIRD, JJ., agree.