Emilia DUKE *v.* Joseph Edward SHINPAUGH
and Rebekah Shinpaugh Ogle, Administrators of the Estate of
Calvin Leeroy Shinpaugh, Deceased

CA 07-229                                                   276 S.W.3d 713

Court of Appeals of Arkansas
Opinion delivered February 20, 2008

[Rehearing denied April 2, 2008.*]

---

* PITTMAN, C.J., and GLADWIN, ROBBINS, and BAKER, JJ., would grant rehearing.

Legal Aid of Arkansas, by: *W. Marshall Prettyman*, for appellant.

*Penix and Taylor*, by: *Stephen L. Taylor*, for appellees.

WENDELL L. GRIFFEN, Judge. Emilia Duke appeals from an order setting aside a deed granting her one acre of property belonging to her late stepfather, Calvin Leeroy Shinpaugh (Mr. Shinpaugh). We hold that the trial court did not err in applying the presumption of undue influence because appellant and Mr. Shinpaugh were in a confidential relationship. Nonetheless, we hold that the trial court erred in 1) excluding a neighbor's testimony that Mr. Shinpaugh intended to give one acre of land to appellant before he died, 2) finding the power of attorney by which appellant conveyed the land to herself by a quitclaim deed was the product of undue influence, and 3) finding that, in making the quitclaim conveyance to herself, appellant overreached the powers granted to her as Mr. Shinpaugh's power of attorney. Accordingly, we affirm in part, but we reverse the trial court's order setting aside the deed, reverse the order ejecting appellant from the entire parcel of land, and remand for a new trial.

## I. Facts

Mr. Shinpaugh and appellant's mother, Frances Shinpaugh, owned 2.9 acres of property in Fayetteville, Arkansas, as tenants by the entirety; their home is located on the northernmost acre. Pursuant to a written agreement and a power-of-attorney form executed by Mr. Shinpaugh in her favor, appellant conveyed the middle acre of this property to herself shortly before Mr. Shinpaugh died. Appellees are Joseph Shinpaugh and Rebekah Ogle, Mr. Shinpaugh's children. Acting as administrators of his estate, appellees filed suit to have the deed set aside and to have appellant removed from the property.

Appellant began living with the Shinpaughs in 1997 due to her mother's poor health. It is undisputed that appellant took care of Mrs. Shinpaugh from that point, and also took care of Mr.

Shinpaugh after his health declined. Additionally, she performed household chores and property maintenance.

Mrs. Shinpaugh died intestate on May 15, 2005. Appellant testified that before her mother died, Mr. Shinpaugh agreed that appellant would be given one acre of their property. Ogle admitted that she spoke with Mr. Shinpaugh about giving property to appellant both before and just after Mrs. Shinpaugh's funeral, but she maintained that her father could not decide which acre to give to appellant.

Appellant continued to live with and care for Mr. Shinpaugh after her mother's death. A few hours after Mrs. Shinpaugh's funeral, after Mr. Shinpaugh met privately with appellees, appellant approached him to discuss "legitimizing" her situation. Within the next few days, she and Mr. Shinpaugh drafted a document entitled "Agreement," which purported to give her one acre of Mr. Shinpaugh's property in recognition of her long-time assistance to the Shinpaughs. This document was typed by appellant's nephew, Calvin Duke, on a computer belonging to John Holmberg, Mr. Shinpaugh's long-time neighbor.

Mr. Shinpaugh was hospitalized on May 23, 2005, due to congestive heart failure. He signed the agreement the next day, on May 24, 2005, while he was still hospitalized. Ogle did not dispute that her father signed the agreement; appellant did not sign the document.

The following day, May 25, 2005, while Mr. Shinpaugh remained hospitalized, he signed a durable power of attorney in favor of appellant, that was prepared by his attorney. Appellees conceded at the hearing that Mr. Shinpaugh signed this form and further conceded that the power of attorney was valid.

After Mr. Shinpaugh's release, appellant continued to live with and care for him. On December 14, 2005, Mr. Shinpaugh suffered a stroke; he was again hospitalized until January 27, 2006. He was thereafter taken to a rehabilitation center, where he died on March 5, 2006.[1] Ogle admitted that her father retained his faculty to understand what was being said to him and to respond appropriately to the end of his life.

On February 8, 2006, approximately one month before Mr. Shinpaugh died, appellant deeded one acre of Mr. Shinpaugh's

---

[1] Appellees initiated a guardianship proceeding shortly before Mr. Shinpaugh died. However, he died before a guardian was appointed.

property to herself, pursuant to the power of attorney. After Mr. Shinpaugh died, appellant continued to live in the Shinpaugh home but never notified appellees that she deeded the property to herself. Appellees found the deed while searching property records to discover the name of the mortgage company holding a reverse mortgage on their father's property. They filed suit in the instant case, alleging, *inter alia,* that Mr. Shinpaugh was incapacitated from December 14, 2005, onward, due to his health conditions, and that appellant breached her fiduciary duty in conveying part of his property to herself. They also filed a detainer action and were granted immediate possession of the entire 2.9 acres of property.

In its written order, the trial court found that a confidential relationship existed between appellant and Mr. Shinpaugh and that the agreement was testamentary in nature, though it did not qualify as a will. However, the court made no finding that appellant procured the agreement. Further, even though appellees never challenged the validity of the power of attorney executed by Mr. Shinpaugh and conceded that the form was valid, the trial court determined that appellant failed to overcome the presumption that the agreement and power of attorney were the product of her undue influence. Finally, the court found that appellant breached her fiduciary duty and that, if the power of attorney was valid, appellant exceeded her power granted under it. Accordingly, the trial court ordered that the deed be set aside and entered a final judgment of possession in appellees' favor of the entire 2.9 acres of property.

## II. Presumption of Undue Influence

We first affirm the trial court's determination that the presumption of undue influence arose, which appellant was required to rebut. Appellant argues that the trial court erred in finding that the agreement was not a will but yet determined that the presumption of undue influence arose.

The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. *See First Nat'l Bank v. Garner,* 86 Ark. App. 213, 167 S.W.3d 664 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *See id.* In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine

the credibility of witnesses and the weight to be accorded to their testimony. *See Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

To be valid as a will, an instrument must be executed with testamentary intent, which is the intention to dispose of one's property upon one's death. *See Edmundson v. Estate of Fountain*, 358 Ark. 302, 189 S.W.3d 427 (2004). We affirm on this point because the agreement contained contradictory terms indicating both that it was a will and that it was not; thus, the trial court could have determined that the agreement was not a will. Moreover, regardless of the nature of the agreement, the undue influence presumption arose because the trial court determined that appellant and Mr. Shinpaugh were in a confidential relationship — a finding that appellant does not challenge on appeal. *See Wesley v. Estate of Bosley*, 81 Ark. App. 468, 105 S.W.3d 389 (2003).[2]

### III. Mr. Holmberg's Testimony

Although we agree that the presumption of undue influence arose, we reverse, first, because the trial court erred in finding that the agreement was the product of undue influence without allowing Mr. Shinpaugh's neighbor, John Holmberg, to testify that Mr. Shinpaugh told him before he died that he wanted to give appellant one acre of land. Appellees raised a hearsay objection when Mr. Holmberg testified that he was aware of the agreement and that he and Mr. Shinpaugh had discussions about it. The trial court assumed that Holmberg would testify that "He [Mr. Shinpaugh] told me he wanted to give Emilia Duke an acre." The trial court ruled that any such testimony would be inadmissible hearsay.[3] Appellant argued that the testimony was admissible pursuant to Ark. R. Evid. 804(b)(3) as a statement against Mr. Shinpaugh's interest. We will not reverse a trial court's ruling on the admission of evidence unless the trial court abused its discretion. *See O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000).

---

[2] Appellees inconsistently assert that the agreement cannot be regarded as making an *inter vivos* transfer of the property to appellant because no delivery of the property was actually made, and that the law concerning gifts raises the presumption of undue influence if the agreement was not testamentary in nature. We note that the intent of the donor can negate the fact that actual title was not transferred. *See O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000).

[3] While no proffer was made, no proffer was necessary because the substance of the testimony was apparent from the context. *See* Ark. R. Evid. 103(2).

█ The trial court's exclusion of Holmberg's testimony was an abuse of discretion because Mr. Shinpaugh's statement, prior to his death, that he intended to give the property to appellant, was a statement against the pecuniary interest of his estate. *See id.* Pursuant to Rule 804(b)(3), a statement against interest is admissible if the declarant is unavailable as a witness. A statement against interest is

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true.

In *O'Fallon*, the trial court found that the decedent made an *inter vivos* gift to his son, after the court admitted testimony that the decedent stated that he "was buying" or "had bought" the vehicle for his son. The *O'Fallon* court affirmed the admission of this testimony under Rule 804(b)(3), as an admission against the pecuniary interest of the decedent's estate. Similarly, here, Mr. Shinpaugh's statement would constitute a statement against the pecuniary interest of his estate because a successful property transfer, whether testamentary or *inter vivos,* would reduce the body of what would be included in Mr. Shinpaugh's estate.

Appellees unpersuasively attempt to distinguish *O'Fallon* on two grounds. First, they argue that any statement Mr. Shinpaugh made would be made while under appellant's undue influence. However, whether Mr. Shinpaugh made any statement under the undue influence of appellant would go to the weight of the statement, not its admissibility. Second, they argue that the issue in *O'Fallon* was whether the decedent had divested himself of the title to his vehicle and that "there can be no question that Leeroy Shinpaugh did not alienate or divest himself of title to the acre of his property while under appellant's undue influence." To the contrary, whether Mr. Shinpaugh divested himself of title to the property when he signed the agreement is the *precise* issue.[4]

---

[4] Appellees further assert that even if Mr. Holmberg's testimony was admissible, it would have only strengthened the trial court's conclusion that a confidential relationship existed between appellant and Mr. Shinpaugh because Mr. Holmberg would have testified

More convincing is appellant's argument that she was prejudiced by the trial court's exclusion of Holmberg's testimony because he was a disinterested, third-party witness whose testimony was critical to prove that Mr. Shinpaugh acted of his own accord and did not agree to convey the property to appellant due to her undue influence. *See Estate of Garrett,* 81 Ark. App. 212, 100 S.W.3d 72 (2003) (citing as evidence supporting a finding of no undue influence the fact that two disinterested witnesses testified that the decedent was of sound mind when he executed his will).

■ Here, due to the trial court's exclusion of Mr. Holmberg's testimony, it erroneously concluded that the agreement was the product of appellant's undue influence without considering all of the relevant, admissible evidence that Mr. Shinpaugh agreed to give appellant the property before he died. Appellant was prejudiced by the ruling to exclude Holmberg's testimony, as she had the burden of proving donative intent and the absence of undue influence. Because appellant was prejudiced by this evidentiary ruling, we reverse and remand for a new hearing.

### III. Power of Attorney

■ We further reverse the trial court's finding that the power of attorney was obtained as the result of undue influence because appellees never developed that argument below. To the contrary, appellees conceded below that the power of attorney was valid. Appellees did not assert in their complaint that the power-of-attorney form was the result of appellant's undue influence. Rather, they simply asserted that she breached her fiduciary duty in deeding the property to herself because Mr. Shinpaugh never agreed to convey any of his property to her.

Nor was the issue tried by the implied consent of the parties. Rather, appellees expressly conceded during the hearing that the document was valid. When Ogle testified that Mr. Shinpaugh revoked the power of attorney, appellees' attorney halted this line of cross-examination and conceded that the power of attorney was valid as written. Because this is so, even though evidence was

that the agreement was due to Mr. Shinpaugh's "complete reliance on appellant for care 24 hours a day." This assertion is speculative, at best, as it assumes how the trial court would interpret the evidence, as well as the weight the court would assign to it.

submitted concerning the events surrounding the drafting of the document, the trial court had no basis for determining that the power of attorney was the product of undue influence.

The trial court further erred in alternatively finding that if the power of attorney was valid, appellant exceeded her authority and powers granted under the terms thereof and breached her fiduciary duty. Contrary to the trial court's oral finding, the power-of-attorney form authorized appellant to deed the property to herself.

The form is entitled, "General Durable Power of Attorney." It states that Mr. Shinpaugh designates appellant to act in his name and for his benefit as follows:

> 1. GENERAL GRANT OF POWER. To exercise or perform any act, power, duty, right, or obligation whatsoever that I now have or may hereinafter acquire, relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereinafter acquired by me, including, without limitation, the following specifically enumerated powers. I grant to my agent full power and authority to do everything necessary in exercising any of the powers herein granted as fully as I might or could do if personally present[.]
>
> . . .
>
> (b) POWER TO ACQUIRE AND SELL. To acquire, purchase, exchange, grant options to sell, and sell and *convey real* or personal *property*, tangible or intangible, or interest therein, *on such terms and conditions as my agent shall deem proper*[.]

(Emphasis added.)[5]

Thus, the plain terms of the power of attorney authorized appellant to convey Mr. Shinpaugh's real property on such terms and conditions as she deemed proper. Obviously, she would deem it proper to convey property to herself that Mr. Shinpaugh

---

[5] Appellant does not specifically challenge the trial court's finding that she exceeded the scope of her authority under the power of attorney. However, we cannot affirm this finding as an alternative, independent ground that appellant failed to challenge because this finding is not *independent* from the remainder of the trial court's findings. The court's decision is related to the fact that it found the agreement to be invalid.

had previously agreed to convey to her. In the simplest terms, consensual self-dealing is permitted. *See Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002) (stating the guiding principle of the fiduciary relationship is that self-dealing is strictly proscribed *unless* the other party to the relationship consents). Because the valid power of attorney authorized appellant to convey Mr. Shinpaugh's property, if he, in fact, agreed to convey the instant property to her, then appellant's self-dealing would be permitted. Hence, on remand the trial court should consider the effect of the power of attorney in light of our reversal on this point as well as its new findings regarding the agreement.

## V. Conclusion

We affirm the trial court's finding that the presumption of undue influence arose because appellant and Mr. Shinpaugh were in a confidential relationship. We reverse and remand because the trial court erroneously determined that the agreement was the product of undue influence without considering the relevant, admissible testimony that, before he died, Mr. Shinpaugh intended to give appellant one acre of his property. We also reverse because the trial court erroneously determined that the power of attorney was the product of undue influence even though appellees conceded that the document was valid, and because the court erroneously determined that appellant exceeded her powers granted under that document.

This, in turn, requires us to reverse and remand the order of judgment and possession ejecting appellant from the *entire* 2.9 acres of land. If the trial court determines on remand that appellant is entitled to receive one acre of Mr. Shinpaugh's land, it should enter an appropriate order based on that finding.

Affirmed in part; reversed and remanded in part.

BIRD, VAUGHT and HEFFLEY, JJ., agree.

MARSHALL, J., concurs.

PITTMAN, C.J., GLADWIN, ROBBINS and BAKER, JJ., dissent.

D.P. MARSHALL JR., Judge, concurring. I concur in the court's judgment. This case should be retried, as the court holds, because the circuit court erred by excluding testimony from Mr. Holmberg about Mr. Shinpaugh's stated intentions to give Ms.

Duke some real property. I also agree that the circuit court erred by invalidating the durable power of attorney. It was prepared for Mr. Shinpaugh at his request by his lawyer, and executed while the lawyer was present and Ms. Duke was not. The appellees conceded the validity of the power at trial. The circuit court therefore erred as a matter of law by reaching out and voiding it in spite of the parties' contrary agreement.

I disagree with the court, however, about procurement. As the court correctly holds, Ms. Duke and Mr. Shinpaugh had a confidential relationship in which she was the dominant party because of his dependence on her. A presumption of undue influence arose from the circumstances surrounding the agreement. *Medlock v. Mitchell*, 95 Ark. App. 132, 136, 234 S.W.3d 901, 905 (2006). The burden shifted to Ms. Duke to overcome that presumption. And the question that the parties and lower court need answered for retrial is: what evidentiary burden must Ms. Duke carry to demonstrate that no undue influence occurred?

If procurement occurred, then she must prove beyond a reasonable doubt that Mr. Shinpaugh decided to give her the acre without improper pressure from her. *Smith v. Welch*, 268 Ark. 510, 513, 597 S.W.2d 593, 595 (1980). If no procurement occurred, then she must prove this point by a preponderance of the evidence. *Ibid.* The weight of Ms. Duke's evidentiary burden may well determine the outcome of this case, and we should be clear about that burden.

The circuit court implicitly found that Ms. Duke procured the agreement because it shifted the burden to her to prove — beyond a reasonable doubt — that she did not unduly influence Mr. Shinpaugh. This is the standard in procurement cases. *Smith, supra; Looney v. Estate of Wade*, 310 Ark. 708, 710, 839 S.W.2d 531, 533 (1992). I would hold that the circuit court did not err on this important embedded issue. The agreement was Ms. Duke's idea. She and Mr. Shinpaugh drafted it together, and she wrote it down. Then her nephew typed it at her request. Ms. Duke waited outside Mr. Shinpaugh's hospital room while he signed it, and then he handed it to her. This is a quintessential procurement situation. *Looney*, 310 Ark. at 710-12, 839 S.W.2d at 533-34.

I part company with the court on one other point. Mr. Shinpaugh's durable power of attorney does not expressly authorize Ms. Duke to make gifts of real property to herself. The "POWER TO ACQUIRE AND SELL" term is just that: an

express power to "sell and convey" real property on whatever terms Ms. Duke decided were best for Mr. Shinpaugh. This conveyance, however, was no sale. It was a gift prompted by Ms. Duke's caregiving.

Now of course Mr. Shinpaugh could give his property away if he wanted to do so, and the "GENERAL GRANT OF POWER" in the power of attorney is broad enough to confer the authority to make gifts on Ms. Duke. But the sticking point is that this gift of land was self dealing. As the court notes, our law forbids a fiduciary from acting in her own interest vis-a-vis her principal unless the principal freely and knowingly consents to the transaction without any undue influence from the fiduciary. *Cole v. Laws*, 349 Ark. 177, 185-86, 76 S.W.3d 878, 883 (2002). This line must not be crossed. As then-judge Cardozo famously wrote, the law holds a fiduciary like Ms. Duke to "the punctilio of an honor the most sensitive." *Litvinko v. Downing*, 260 Ark. 868, 870, 545 S.W.2d 616, 617 (1977) (quoting *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928)).

This case, then, rests on the agreement coupled with the power of attorney. If Ms. Duke proves beyond a reasonable doubt that Mr. Shinpaugh wanted to give her an acre of land and signed the agreement embodying this desire without undue influence, then the durable power of attorney authorized her to implement Mr. Shinpaugh's wishes. But the power of attorney standing alone did not authorize her to make this gift of land to herself.

With these explanations and limitations, I concur in the court's judgment reversing and remanding for a new trial.

JOHN MAUZY PITTMAN, Chief Judge, dissenting. This is a clear case involving only two issues: first, did the trial court commit reversible error by not permitting a neighbor to testify that the decedent intended to give an acre of land to appellant; and second, did the trial court erroneously conclude that the quitclaim deed given by appellant to herself was invalid due to overreaching? In a remarkable opinion, the majority holds that the trial court did err on both counts. I would affirm.

A more detailed exposition of the facts is necessary to fully understand the issues. Appellant Emilia Duke is the stepdaughter of the decedent, Calvin Leeroy Shinpaugh. Appellant had spent the previous eight years living in the home shared by her mother and decedent in order to save money on rent. During that time she

cared for her mother and, later, her stepfather, as their health deteriorated. By the time appellant's mother died in May 2005, Mr. Shinpaugh was wheelchair-bound and in great pain. Physically helpless, he had by this time become completely dependent on appellant for all the necessities of life. By her own admission, appellant was very worried because her mother had died intestate and she did not know whether she would be allowed to remain in the Shinpaugh residence. Her anxiety was exacerbated when, following her mother's funeral, Mr. Shinpaugh spent four hours with his children outside her presence, and Mr. Shinpaugh's attorney told her that she "was nothing after he died."

So, a few days after the death of a wife to whom Mr. Shinpaugh was utterly devoted, appellant, after querying an attorney acquaintance concerning the best method of doing so, "sought to legitimize [her] presence in the house through . . . the agreement." The "agreement" was obtained by appellant while Mr. Shinpaugh was hospitalized for congestive heart failure. It was composed at appellant's behest, with her active assistance with respect to the contents, and was typed by appellant's nephew. It read as follows:

### AGREEMENT

*I, Calvin Leroy* [sic] *Shinpaugh, residing at 3275 N. Wagner Road, Fayetteville, AR 72704, Being of sound mind and competent this 24th day of May 2005 date* [sic]*; I give to Emilia Duke one acre of land adjacent to the north of the one acre at the corner of Wagner Road and Weir Road. I also bequeath the household objects belonging to her mother and her father, James Duke, which consists* [sic] *of; two rocking chairs, a Black gum desk, a Morraçan* [sic] *tray, and various other objects of furniture and plants. Not included is an Acrosonic piano. I also give to her the contents of the bank box located in the Bank of Elkins, Elkins, AR, which belonged to Francis Shinpaugh, her mother. In the box are items such as; a seventeen hundreds* [sic] *coin, an ivory Buddha, a diamond ring and other items.*

*Emilia has lived at 3275 N. Wagner Road for eight years. We invited her to live here. In the duration she was a caregiver for my wife Francis for four to six years at six to eight hours a day with no holidays. She has cleaned, maintained three acres, did* [sic] *landscaping and gardening and various othetr* [sic] *tasks.*

*Emilia, at the time of this will, was a twenty-four hour caregiver to Francis, an eighty-five year old stroke patient. Emilia changed her diaper, spoon-fed*

*her, lifted her, changed her clothes, gave her sponge baths and all personal hygiene. She is also doing the yard work, running errands, cooking, washing dishes and at the time of this writing, taking us to doctors appointments.*

*In the duration of the time that Emilia has been living with us, she has supported herself by building furniture and selling it to local businesses. Supplementary to this, she helped support Calvin Duke, our grandson and parented him. Calvin Duke was present part-time for eighteen years.*

*This is my only will to date. This document is not revocable. I, Calvin Leroy[sic] Shinpaugh, am a primary beneficiary.*

*This document under contest will not be my will as is made clear and concise what I wanted at signing.*

[Signature] *Calvin Leroy* [sic] *Shinpaugh*

_____ *Witness*

_____ *Witness*

[Signature] *Notary*

What are we to make of this document? Clearly, it fails to meet the requirements of a will or a deed. It is not a contract, because it contains no mutual obligations and because past consideration will not support a current promise,[1] and it is not an *inter vivos* gift, because there was no delivery of a deed to the property before Mr. Shinpaugh's demise.[2] In sum, this document is precisely what it appears to be—an unschooled attempt to secure Mr.

---

[1] *See, e.g., Simmons v. Simmons*, 98 Ark. App. 12, 249 S.W.3d 843 (2007), and cases cited therein.

[2] The majority opinion cites *O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000), for the proposition that "the intent of the donor can negate the fact that actual title was not transferred." This is specious, because in that case the donee of the auto was too young to hold title, and it was undisputed that there was actual delivery of the automobile. Actual delivery is an indispensable requisite without which a gift fails, and mere intention cannot supply it regardless of the consequences. *Irvin v. Jones*, 310 Ark. 114, 832 S.W.2d 827 (1992); *Jamison v. Estate of Goodlett*, 56 Ark. App. 71, 938 S.W.2d 865 (1997). In the case of realty, the requirement of actual delivery must, at a minimum, include delivery of a deed to the property. *See Smith v. Van Dusen*, 235 Ark. 79, 357 S.W.2d 22 (1962).

Shinpaugh's property that nevertheless failed to transfer any legal right to the property to appellant. Could Mr. Shinpaugh have procured the assistance of an attorney in this matter? Of course he could have, just as he did the very next day when, still hospitalized, he executed the power of attorney under the authority of which appellant deeded the property to herself. It is crystal-clear that the "agreement" is ineffective because the drafter lacked the legal knowledge necessary to make a will, deed, contract, or gift *inter vivos*, and that the reason no attorney was involved was because appellant did not want her helpless stepfather to have the independent advice that an attorney would provide him.

It would be difficult to imagine a more clear-cut case of undue influence and overreaching, yet the majority reverses the trial court's finding to this effect because of an asserted error in refusing to admit the testimony of Mr. Shinpaugh's neighbor that he believed Mr. Shinpaugh intended to give an acre of land to appellant before his death. What possible prejudice could appellant have suffered because the neighbor's opinion regarding Mr. Shinpaugh's intent was excluded? This point was not contested. Appellee Ogle herself admitted that her father intended to give one acre of land to appellant. His neighbor's opinion regarding this intent is of no relevance. The question, instead, is what Mr. Shinpaugh *did* do: did he effectively complete an *inter vivos* transfer of land by the document titled "agreement"? Clearly, in the absence of delivery, he did not, and I cannot agree that a failed *inter vivos* gift of land can be completed by the intended beneficiary pursuant to a general power of attorney.

The crux of this case is the validity and legal effect of the "agreement." Not only does it fail as a will, deed, contract, or *inter vivos* gift, it was quite clearly procured by appellant's overreaching. Regardless of whether the power of attorney was otherwise legitimate, it gave appellant no authority to grant herself a deed based on the strength of a document of no legal effect procured by undue influence from a bereaved and hospitalized elderly stepparent. The majority's opinion to the contrary leaves me frankly astonished.

I respectfully dissent.

GLADWIN, ROBBINS, and BAKER, JJ., join in this dissent.